# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO:_____ |
| | | |
| v. | : | DATE FILED: |
| | | |
| BHASKAR SAVANI | : | VIOLATIONS: |
|    a/k/a "Dr. B," | | 18 U.S.C. § 1962(d) (RICO |
| ARUN SAVANI | : | conspiracy – 1 count) |
| NIRANJAN SAVANI | | 18 U.S.C. § 371 (visa fraud |
|    a/k/a "Nin," | : | conspiracy - 1 count) |
| SUNIL PHILIP | | 18 U.S.C. § 1546 (visa fraud – 5 |
|    a/k/a "A. Philipose," | : | counts) |
| AMEN DHYLLON | | 18 U.S.C. § 371 - (obstruction of |
|    a/k/a "Dr. Amen," | : | justice conspiracy – 1 count) |
| ALEKSANDRA RADOMIAK | | 18 U.S.C. § 1349 (health care |
|    a/k/a "Ola," | : | fraud conspiracy – 1 count) |
| JON JULIAN | | 18 U.S.C. § 1347 (health care fraud |
| VIVEK SAVANI | : | – 15 counts) |
| BHARATKUMAR PARASANA | | 18 U.S.C. § 1956(h) (money |
|    a/k/a "Kumar," | : | laundering conspiracy – 1 |
| HITESHKUMAR GOYANI | | count) |
| PIYUSHA PATEL | | 18 U.S.C. § 1956 (money |
| SUSAN MALPARTIDA | : | laundering – 9 counts) |
| | : | 18 U.S.C. § 1957 (money |
| | | laundering – 3 counts) |
| | : | 18 U.S.C. § 371 (conspiracy to |
| | | defraud the United States |
| | : | Treasury – 1 count) |
| | | 18 U.S.C. § 1343 (wire fraud – |
| | : | 3 counts) |
| | | 18 U.S.C. § 371 (conspiracy to |
| | : | distribute adulterated and |
| | | misbranded device – 1 count) |
| | : | 18 U.S.C. § 2 (aiding and |
| | | abetting) |
| | : | Notices of forfeiture |

## INDICTMENT

## COUNT ONE

## CONSPIRACY TO COMMIT RACKETEERING
## 18 U.S.C. § 1962(d)

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1.      Defendants BHASKAR SAVANI, a/k/a "Dr. B," ARUN SAVANI, and NIRANJAN SAVANI, a/k/a "Nin," were brothers who owned and controlled a multi-state network of dental practices, related dental businesses, related non-dental businesses, and significant real estate holdings. As described in detail below, defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, SUNIL PHILIP, a/k/a "A. Philapose," ALEKSANDRA RADOMIAK, a/k/a "Ola," and AMEN DHYLLON, a/k/a "Dr. Amen," and others both known and unknown to the grand jury, were members and associates of a criminal organization that engaged in criminal acts and other activities in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere.

<u>The Racketeering Enterprise</u>

2.      The criminal organization, including its leadership, members, and associates, constituted an Enterprise as defined in Title 18, United States Code, Section 1961(4), namely, a group of entities and individuals associated in fact and referred to in this indictment as the "SAVANI GROUP." The Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

3.      The entities included in the SAVANI GROUP are: A+ Family Dental

2

Care, A+ Family Dental Care PC, A-1 Iowa Dental PLLC, A-1 Enterprise LLC, A-1 Family

Dental Care PC, Advanced Family Dentistry PC, Advanced Family Smile Care PC, A+ Oral

Surgery Specialty Care PC, AAA Denta Lab LLC, AAA Signature Smile PC, Allied

Orthodontics, Allied Orthodontics PC, American Dental Management PC, American Dental

Management Group LLC, American Management Group, American Management Group LLC,

American Unity Dental, American Unity Dental PA, American Real Estate Group LLC, Denta

Depot LLC, Dentaweb LLC, Biotek, EZ Biotek LLC, Harleysville Real Estate Group LP,

Horsham Real Estate Group LP, Osseolink USA LLC, Presidential Plan LLC, Smile Krafters PC,

The Dental Future Center, and Whitehall Oral Surgery PC. These SAVANI GROUP entities were

owned and controlled by defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN

SAVANI, and were located in the Eastern District of Pennsylvania and elsewhere.

      4.     At all times material to this indictment, Advantage Dental PC, Faces &

Braces Inc., Smilekrafters Dental LLC, and United Dentistry PC were owned by members of the

Enterprise and controlled by the SAVANI GROUP and defendants BHASKAR SAVANI, ARUN

SAVANI, and NIRANJAN SAVANI, and were located in the Eastern District of Pennsylvania.

<u>Roles of the Defendants</u>

      5.     Defendant BHASKAR SAVANI owned and controlled SAVANI GROUP

dental practices and related dental companies, and he was a licensed dentist who was responsible

for running SAVANI GROUP dental practices and other related companies.

      6.     Defendant ARUN SAVANI owned and held a management role in

numerous SAVANI GROUP companies, as described in detail below, and was primarily

responsible for controlling the financial affairs and real estate of the SAVANI GROUP.

7.      Defendant NIRANJAN SAVANI owned and controlled SAVANI GROUP dental practices in several states and related dental businesses, including dental supply company Denta Depot LLC. Defendant NIRANJAN SAVANI was a licensed dentist who practiced some dentistry.

8.      Defendant SUNIL PHILIP was the outside accountant for the SAVANI GROUP, as well as the personal accountant for defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and for Person #1, known to the grand jury, among others both known and unknown to the grand jury.

9.      Defendant AMEN DHYLLON, a/k/a "Dr. Amen," was a dentist and orthodontist who began working for the SAVANI GROUP in or about 2012.

10.     Defendant ALEKSANDRA RADOMIAK, a/k/a "Ola," was an employee of the SAVANI GROUP initially employed as a foreign worker in a "specialty occupation" under the H-1B visa program. Among other roles, she worked as a dental practice manager, held equity interests in SAVANI GROUP companies, and over time, held a trusted role in the management and operation of SAVANI GROUP dental practices.

<u>Co-conspirators</u>

11.     Person #1 began working for the SAVANI GROUP in or about 2007. The SAVANI GROUP filed multiple petitions with United States Citizenship and Immigration Services ("USCIS") requesting that Person #1 be permitted to work for the SAVANI GROUP under a specialty immigration program, referred to as the H-1B visa program which is discussed further in paragraphs 18 through 24 of this indictment. Over time, Person #1 advanced within the SAVANI GROUP to become its controller, and managed and controlled the transfer of money through the SAVANI GROUP's myriad bank accounts, opened bank accounts, prepared

4

supporting documentation for fraudulent tax returns on behalf of SAVANI GROUP companies, and managed spreadsheets tracking kickbacks paid by SAVANI GROUP H-1B employees, among other job functions. Person #1 worked closely with, and at the direction of, defendants BHASKAR SAVANI and ARUN SAVANI.

12.     Person #2, known to the grand jury, began working for the SAVANI GROUP in or about 2008. The SAVANI GROUP filed multiple petitions with USCIS requesting that Person #2 be permitted to work for the SAVANI GROUP under the H-1B visa program. Over time, Person #2 advanced within the SAVANI GROUP, and managed accounting for its real estate and non-dental businesses and helped obtain bank loans and lines of credit on behalf of the SAVANI GROUP. Person #2 worked closely with, and at the direction of, defendants BHASKAR SAVANI and ARUN SAVANI.

13.     Person #3, known to the grand jury, began working for the SAVANI GROUP in or about 2005. The SAVANI GROUP filed petitions with USCIS requesting that Person #3 be permitted to work for the SAVANI GROUP under the H-1B visa program. Person #3 was an employee and partner dentist of the SAVANI GROUP. At the direction of defendants BHASKAR SAVANI and ARUN SAVANI, Person #3 lied to managed care organizations ("MCOs") following the MCOs termination of defendant BHASKAR SAVANI's Medicaid contracts. Person #3 agreed to open "on paper" dental corporations of which he was the nominee owner, including Smilekrafters Dental LLC, Advantage Dental PC, and United Dentistry PC. For the purpose of falsely appearing to be independent of defendant BHASKAR SAVANI and the SAVANI GROUP, Person #3 obtained Medicaid contracts for Smilekrafters Dental LLC, Advantage Dental PC, and United Dentistry PC with MCOs and at locations where defendant BHASKAR SAVANI and SAVANI GROUP practices had been terminated.

5

Purposes of the Enterprise

14.     The purposes of the Enterprise included, but were not limited to, the following:

a.     Enriching the members and associates by defrauding Medicaid through a far-reaching, multi-faceted billing fraud scheme using a myriad of business entities, some with nominee "owners" designed to conceal the members' role in the fraud;

b.     Exploiting a workforce comprised of foreign nationals who were permitted to work in the United States on H-1B visas sponsored by the Enterprise based on fraudulent representations about the positions for which the foreign nationals would be employed, and the amount which they would be paid. The foreign nationals were financially indebted to the SAVANI GROUP, and were willing to aid in the commission of criminal acts at the direction of members of the Enterprise to remain employed by the SAVANI GROUP and to remain in the United States;

c.     Concealing and laundering fraud proceeds through a complex web of financial transactions using a vast network of bank accounts;

d.     Evading tax obligations by failing to report taxable income, inflating business expenses through a vast expense fraud scheme, and filing fraudulent tax returns;

e.     Generating profits through the implantation in patients of prototype dental devices that were not approved for human use; and

f.     Concealing the activities of the members and associates of the Enterprise from law enforcement scrutiny.

6

**Racketeering Conspiracy**

15.     From in or about February 2009 through in or about November 2021, in

the Eastern District of Pennsylvania, and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**NIRANJAN SAVANI,**
**a/k/a "Nin,"**
**SUNIL PHILIP,**
**a/k/a "A. Philipose,"**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen," and**
**ALEKSANDRA RADOMIAK,**
**a/k/a "Ola,"**

and other persons known and unknown to the grand jury, being persons employed by and

associated with the Enterprise, which engaged in, and the activities of which affected, interstate

and foreign commerce, knowingly and intentionally conspired with each other and other co-

conspirators known and unknown to the grand jury, to violate Title 18, United States Code,

Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the

affairs of the Enterprise, through a pattern of racketeering activity, as defined in Title 18, United

States Code, Sections 1961(1) and 1961(5), consisting of multiple acts indictable under the

following statutes:

a.     Title 18, United States Code, Section 1546 (relating to fraud and

misuse of visas, permits, and other documents);

b.     Title 18, United States Code, Section 1343 (relating to wire fraud);

c.     Title 18, United States Code, Section 1956 (relating to the

laundering of monetary instruments);

       d.    Title 18, United States Code, Section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); and

       e.    Title 18, United States Code, Section 1341(relating to mail fraud).

16.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

## MANNER AND MEANS

17.    The manner and means by which the defendants and their coconspirators agreed to conduct the affairs of the Enterprise included the following, among others:

       a.    making false representations to obtain visas for foreign nationals to work for the SAVANI GROUP to create a compliant workforce that was paid less than prevailing salary rates in the United States;

       b.    fraudulently obtaining Medicaid contracts by appointing dentists, who worked as employees or contractors of dental practices controlled by the Enterprise, as nominee owners of the practices;

       c.    submitting claims to Medicaid using the National Provider Identification ('NPI')[1] of a dentist who was physically outside of the United States, and billing for dental services performed by dentists not credentialed to provide Medicaid dental services in Pennsylvania;

---

[1] An NPI number is a unique, ten-digit, numeric identifier issued to healthcare providers in the United States by the Centers for Medicare and Medicaid Services. NPI numbers are used by patients and health insurance providers on Medicare and Medicaid claim forms to identify those who provided the medical service.

d.      laundering the proceeds of the health care fraud scheme through multiple bank accounts to conceal their illicit profits;

e.      submitting fraudulent and false tax returns to understate the actual income of the members; and

f.      circumventing Food and Drug Administration ("FDA") regulatory requirements and defrauding patients by placing unapproved dental devices in patients without their knowledge and informed consent.

## The Schemes

### The Visa Fraud Scheme

18.     The "H-1B Specialty (professional) Workers" ("H-1B") program allowed an employer to temporarily employ a foreign worker in the United States on a nonimmigrant basis in a "specialty occupation."

19.     A "specialty occupation" required the theoretical and practical application of a body of specialized knowledge and a bachelor's degree or the equivalent in the specific specialty (*i.e.* science, medicine, health care, education, or technology). Current laws limited the number of foreign workers who could be issued an H-1B visa or otherwise be provided H-1B status.

20.     Each employer seeking to employ an H-1B nonimmigrant was required to submit a completed Labor Condition Application for Nonimmigrant Workers (Form ETA-9035) ("LCA") to the United States Department of Labor ("USDOL"), and Petition for Nonimmigrant Worker (Form I-129) ("I-129 Petition") to USCIS. Both the LCA and I-129 Petition required the employer to certify under the penalty of perjury: the employer, the type of work the worker would perform, the location of that work, the worker's wages, and other relevant information.

21.     In order to avoid an adverse effect upon workers within the United States, the employer using the H-1B program was required to certify, among other things, the employer, the wage rate, the work location, and the prevailing wage for the work location for the occupation for which the nonimmigrant worker was being employed as part of the completion of the LCA.

22.     The H-1B certification was valid for a period of employment of up to three years. The employer could thereafter seek an extension of this status, for up to a maximum continuous period of six years, unless USCIS granted a further extension. After the H-1B visa expired, the foreign worker had to remain outside the United States for one year before another I-129 Petition could be approved.

23.     To hire a foreign worker on an H-1B visa, an employer must first have had a job available that met certain criteria, including that the job must have been a professional position that required, at a minimum, a bachelor's degree in a specialized field.

24.     The employer must also have taken certain steps as part of the H-1B application process, including:

a.      The employer must have submitted to the United States Department of Labor Employment and Training Administration ("USDOL ETA") a completed LCA. The completed LCA contained forms that required the employer to make several attestations regarding the nature of the employment position at issue, the number of employees needed, the period of employment, the work location, and the wage rate. The LCA forms also contained a statement warning the official for the petitioning employer that it was a violation of federal law to make false statements on the forms. The official for the petitioning employer was required to sign the forms before they were submitted to the USDOL.

b.      Within one working day of the filing of the LCA, the petitioning employer was required to make the LCA and necessary supporting documentation available for public examination at the employer's principal place of business in the United States and/or the place where the foreign national was to be employed.

c.      If the LCA was approved by USDOL, the employer was required to submit a copy of the approved LCA to USCIS along with a completed Form I-129 Petition requesting H-1B classification. The I-129 Petition required the employer to provide information about the company, the foreign beneficiary, and the proposed employment position. With regard to the employment position, the employer had to include the employer, job title, work location, wage rate, and the dates of intended employment. The official for the employer was required to sign the form, under penalty of perjury, and attest that all information submitted with the I-129 Petition was true and correct.

25.     From in or about February 2009 through in or about October 2020, the SAVANI GROUP, and defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and VIVEK SAVANI (charged elsewhere in this indictment), BHARATKUMAR PARASANA (charged elsewhere in this indictment), HITESHKUMAR GOYANI (charged elsewhere in this indictment), PIYUSHA PATEL (charged elsewhere in this indictment), and others known and unknown to the grand jury, knowingly engaged in a conspiracy to commit visa fraud.

26.     In furtherance of the conspiracy, the SAVANI GROUP recruited certain workers from India and elsewhere to work in the United States on an H-1B visa. However, the SAVANI GROUP never intended to hire the recruits for a position that was eligible for an H-1B visa. Instead, the SAVANI GROUP negotiated with the recruits to accept a position that was not

eligible for an H-1B visa, with a plan to submit false information to USCIS and USDOL. After a particular recruit and the SAVANI GROUP agreed to the terms of the position, the SAVANI GROUP, with the recruit's help, would prepare the LCA, I-129 Petition, and other materials for submission.

27.     To secure H-1B visas, the SAVANI GROUP knowingly submitted false statements to USDOL and USCIS, which included the recruits' offered job title and duties in a "specialty occupation," which made the job eligible under the H-1B visa program, such as a chemist, pharmaceutical researcher, business analyst, software developer, programmer, or other job. This was notwithstanding that recruits' true job titles and duties would be for a non-technical position like a dental office manager, maintenance worker, warehouse worker, or other job. Other SAVANI GROUP false statements on the LCAs and I-129 Petitions included those related to the recruits' qualifications, intended employer, intended work location, and wages. Once a particular recruit's LCA and I-129 Petition were approved, the recruit would enter the United States (if not already in the United States) to work for the SAVANI GROUP.

28.     Once onboarded, typically the SAVANI GROUP paid the H-1B employee ("H-1B employee") a wage equal to the H-1B-required "prevailing wage" with a W-2 issued by the company that petitioned the H-1B employee. The SAVANI GROUP then required H-1B employees to pay back, or kick back, wages to conceal that these employees were paid less than the "prevailing wage."

29.     In addition, the SAVANI GROUP generally required its H-1B employees to pay certain visa-related fees that, under federal law, could not be charged to the H-1B employee. Moreover, the SAVANI GROUP even required some of its H-1B employees to pay the payroll tax portion of their W-2 wages.

30.     The SAVANI GROUP also directed certain H-1B employees to omit information or lie to government officials if there was any inquiry about the H-1B employee's employment with the SAVANI GROUP.

31.     In some instances, the SAVANI GROUP hired an H-1B employee's spouse to work at the SAVANI GROUP "under the table." One way the SAVANI GROUP paid a spouse was by reducing the amount the H-1B employee was required to pay back, or kick back, to the SAVANI GROUP.

32.     The SAVANI GROUP company EZ Biotek LLC (hereinafter "EZ Biotek") played a central role in the visa fraud scheme. The SAVANI GROUP purported that EZ Biotek was a chemical, pharmaceutical, and scientific company. In actuality, EZ Biotek was primarily a shell company used to further the SAVANI GROUP's visa fraud scheme.

33.     In or about 2012, defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI created physical office space for EZ Biotek on the second floor of the SAVANI GROUP's corporate headquarters located at 401 Commerce Drive, Fort Washington, Pennsylvania. The SAVANI GROUP filled the office with older lab equipment that served no purpose other than to make the EZ Biotek office appear to be a working scientific lab in order to deceive government officials about the true occupation, employer, and work address for certain H-1B employees.

34.     Over the course of several years after the EZ Biotek office was opened, defendant ARUN SAVANI directed certain H-1B employees to regularly visit the EZ Biotek office to deceive government officials who might ask questions about it.

35.     In or about 2012, defendant ARUN SAVANI convened a meeting of certain SAVANI GROUP H-1B employees. At the meeting, defendant ARUN SAVANI

13

expressed concern that government authorities could discover the SAVANI GROUP's H-1B

fraud scheme and directed H-1B employees to refrain from paying back, or kicking back, wages

by check, and to instead pay those wages in cash to Person #1 in the SAVANI GROUP's

accounting department.

36.     In or about 2012, defendant ARUN SAVANI directed the SAVANI

GROUP to issue email addresses that included the domain name "ezbiotek" to certain H-1B

employees purportedly employed by EZ Biotek. This was also done to deceive government

officials.

37.     The SAVANI GROUP submitted LCAs and I-129 Petitions sponsoring at

least 15 employees for H-1B visas, in which defendants BHASKAR SAVANI, ARUN SAVANI,

or NIRANJAN SAVANI made false statements related to one or more of the following: (1) the

H-1B employee's true employer; (2) the H-1B employee's true work location; (3) the H-1B

employee's true job title and responsibilities; and (4) the H-1B employee's true wages.

38.     Related to the visa fraud, defendants BHASKAR SAVANI and ARUN

SAVANI, along with defendant SUSAN MALPARTIDA (charged elsewhere in this indictment),

and others, conspired to obstruct a federal grand jury investigation pending in the Eastern District

of Pennsylvania. In or about November 2018—only weeks after a court-authorized search of

SAVANI GROUP offices—defendant ARUN SAVANI instructed Person #25, known to the

grand jury, to encourage employees of the SAVANI GROUP's American Unity Dental office in

New Jersey to conceal from government officials that Person #25 was an office manager for

American Unity Dental office in New Jersey, rather than a chemist for American Management

Group PC ("AMG PC") in Fort Washington, Pennsylvania as described in his I-129 Petition.

Person # 25 held a meeting at the Clifton, New Jersey office and asked all the employees not to

disclose to others that he was the regional manager, and that he primarily worked in New Jersey. Instead, Person #25 asked this group to falsely say, if asked, that he worked on "dental materials," or "dental molds" (*i.e.*, chemistry-related) and worked primarily at the SAVANI GROUP's headquarters in Fort Washington, Pennsylvania. The employees generally agreed.

39.     On another occasion, defendants BHASKAR SAVANI and ARUN SAVANI instructed Person #25 not to disclose his actual occupation or work location to government officials.

40.     In or about March 2020, USCIS officers conducted an administrative site visit at the Clifton, New Jersey office and questioned the office coordinator Person #5, known to the grand jury, and the receptionist, defendant SUSAN MALPARTIDA. Person #5 generally followed Person #25's instructions and made false statements to the officers about Person #25's actual occupation and primary worksite.

41.     In or about July 2020, USCIS sent AMG PC a Notice of Intent to Revoke Person # 25's H-1B visa. In response, AMG PC submitted an affidavit from each of Person #5, Person #25, and defendant SUSAN MALPARTIDA, who all made false statements about Person #25's employment with the SAVANI GROUP.

42.     On or about May 14, 2021, USCIS ordered that Person # 25's I-129 Petition be revoked.

43.     In or about August 2021, defendant SUSAN MALPARTIDA appeared before a federal grand jury in the Eastern District of Pennsylvania and falsely swore under oath that Person #25 was a chemist who worked on "polymers" and that generally she had never seen him complete management duties.

15

## The Health Care Wire Fraud Scheme

44.     The Medicaid program was a health insurance program established by Congress under Title XIX of the Social Security Act of 1965 that provided health insurance coverage to individuals who qualified under a "categorically needy" program or by meeting the conditions to be considered "medically needy." Recipients of medical services, including dental services, were referred to as Medicaid "recipients" or "beneficiaries." Medicaid was overseen by the Centers for Medicare and Medicaid Services ("CMS"), an agency within the United States Department of Health and Human Services ("HHS").

45.     The Medicaid program was jointly financed by the federal and state governments and administered at the state level. Medicaid provided health insurance and prescription coverage for many low-income individuals; offered long-term care assistance to individuals over the age of 65 and individuals with disabilities; covered gaps in the Medicare program; and funded institutions that serve a disproportionate number of low-income patients with special needs. The federal government reimbursed states for a portion of the cost of their Medicaid programs depending on the state's per capita income. Dental services were partially covered by Medicaid.

46.     Medicaid was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

47.     The Pennsylvania Medicaid program provided basic medical coverage, including dental coverage, for low-income, disabled, and elderly persons. The federal government funded a significant portion of the Pennsylvania Medicaid program while the remaining balance was funded by the Commonwealth of Pennsylvania. The program was administered by the

Commonwealth of Pennsylvania.

48.     All eligible Medicaid beneficiaries presenting for services in Pennsylvania received Medical Assistance ("MA") services through either the fee-for-service ("FFS") or the managed care delivery system. The FFS system provided payment on a per-service basis for health care services to eligible Medicaid beneficiaries. Under the managed care delivery system, Medicaid beneficiaries received health care through a managed care organization ("MCO") under contract with the Pennsylvania Department of Human Services or the county government.

49.     MCOs #1, #2, and #3, known to the grand jury, were contracted by the Pennsylvania Department of Human Services to administer the Pennsylvania Medicaid dental program. In turn, these MCOs contracted with Third Party Administrators ("TPAs") #1, #2, and #3, known to the grand jury, to assist the MCOs in administering the Pennsylvania Medicaid dental program.

50.     The FFS program covered: (1) MA beneficiaries who were newly eligible for Medicaid and in the process of selecting an MCO to serve them; (2) beneficiaries institutionalized for more than 30 days; and (3) beneficiaries aged 21 and older who were dually eligible for Medicare[2] and Medicaid. The MCO program covered the remainder of Medicaid beneficiaries who were eligible for MA services and had selected an MCO to serve them. Most of the MA population was enrolled under the MCO program.

51.     Under the FFS program, after performing qualifying dental procedures to Medicaid recipients, a provider would submit electronic claims to the Pennsylvania Department of Human Services Provider Reimbursement and Operations Management Identity System

---

[2]     Medicare is federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.

("PROMISe") using a dentist's NPI.

52.     For recipients enrolled with an MCO, after providing qualifying dental services to Medicaid recipients, a provider would submit electronic or paper claims using the approved method designated by a particular MCO.

53.     In Pennsylvania, MCO #1 serviced dental patients in the Health Choices Lehigh/Capital Region, which included the following counties: Northhampton, Lehigh, Berks, Lancaster, Lebanon, Dauphin, York, Perry, Cumberland, Adams, Franklin, Huntingdon, and Fulton. MCO #1 used TPAs #1 and #2 to help administer the Medicaid program in this region.

54.     In Pennsylvania, MCO #2 serviced dental patients in the Health Choices Southeast Region, which included the following counties: Bucks, Chester, Montgomery, Delaware, and Philadelphia. MCO #2 used TPAs #1 and #2 to help administer the Medicaid program in this region.

55.     In Pennsylvania, MCO #3 serviced dental patients in the Health Choices Southeast Region, which included the following counties: Bucks, Chester, Montgomery, Delaware, and Philadelphia. MCO #3 used TPA #3 to help administer the Medicaid program in this region.

56.     Claims submitted electronically to MCO #1 and MCO #2 through TPA #1 were submitted through an on-line portal and were electronically routed through a server located in Charlestown, Massachusetts.

57.     Claims submitted electronically to MCO #1 and MCO #2 through TPA #2 were submitted through an on-line portal and were electronically routed through a server located in Menomonee Falls, Wisconsin.

58.     Claims submitted electronically to MCO #3 through TPA #3 were

18

submitted through an on-line portal and were electronically routed through servers located in Maryland and Virginia.

<u>Provider Credentialing and Reimbursement</u>

59.     In order to render MA services in Pennsylvania, the provider was required to enroll in the Pennsylvania Medicaid program through a credentialing process. Dentists who enrolled in Pennsylvania Medicaid and sought to provide covered dental services to Medicaid recipients were known as "Providers." To be eligible to enroll as a provider, practitioners in Pennsylvania had to be licensed and currently registered by the appropriate state agency. In the provider application, dental providers indicated whether, among other possible categories, they were individual providers or group practice providers. Out-of-state practitioners had to be licensed and currently registered by the appropriate agency in their state. Upon successful enrollment with the Pennsylvania Medicaid program, a provider obtained a "PROMISe" identification number.

60.     Once enrolled, MA providers received a letter confirming their enrollment, notifying them to follow state and federal regulations, and directing them to the Pennsylvania Department of Human Services website, www.dhs.pa.gov, for necessary forms, regulations, provider handbooks and billing information, among other information. The Pennsylvania Department of Human Services website contained detailed information for dental MA providers.

61.     If an enrolled MA provider wanted to participate in an MCO network, the provider had to contact the participating MCO(s) directly. To be eligible to be credentialed by an MCO, the provider must already have been enrolled in the PA Medicaid program and must have had a PROMISe identification number. A provider could enroll with one or more MCOs. To

enroll with an MCO, an MA provider was required to have: (a) submitted documentation to the MCO verifying that they were an enrolled MA provider with the Commonwealth of Pennsylvania, and (b) agreed to meet the specific requirements and conditions for network participation set forth by the MCO. To submit claims and receive reimbursement for MA services provided, an individual provider had to be credentialed by the MCO at the specific location(s) where they rendered services and where a particular service being billed for was performed.

62.     Upon credentialing with an MCO, participating providers agreed to comply, and to ensure that providers with whom they contracted complied, with laws applicable to individuals and entities receiving federal funds, as well as all other applicable state and federal laws and regulations, including but not limited to those governing participation in the MA Program pursuant to 42 C.F.R. 422.504(h) and 42 C.F.R. 422.504(i)(4)(v).

63.     Providers who rendered services under FFS had to be credentialed with Pennsylvania Medicaid before rendering services. In turn, if services were provided through an MCO, the contracted MCOs additionally required providers to be credentialed with the participating MCO before they rendered any services to MA beneficiaries.

64.     A Medicaid claim was required to set forth, among other things, the patient's name and Medicaid identification number, the services performed for the patient, the date the services were provided, the cost of the services, the name and NPI number of the dentist who rendered the services, and the location where the services were rendered. Upon submitting a claim to Medicaid, a provider certified, among other things, that the information submitted regarding claims or encounter data was true, accurate and complete; and that the claim or encounter data submitted was prepared in compliance with the laws and regulations governing Medicaid and the Commonwealth of Pennsylvania.

65.     By directly or indirectly receiving state and federal program funds, the MCOs and individual MA health care providers were subject to all applicable federal and/or state laws and regulations relating to the Pennsylvania Medicaid program. Violations of applicable federal and/or state laws and regulations constituted fraud or abuse against the MA program. Pursuant to statute, including 55 Pa. Code §1101.75, providers were prohibited from directly or indirectly mispresenting, among other things, the description of the services provided, the date of service, and/or identity of the recipient, or the identity of the attending, prescribing, referring or actual provider.

66.     Pursuant to the federal and state laws and regulations governing the provision of MA dental services in the Commonwealth of Pennsylvania, and with very limited exception, a credentialed dental provider could not "supervise" an uncredentialed dentist in performing MA dental services and then seek reimbursement for the services performed by the uncredentialed provider under the credentialed provider's PROMISe and NPI numbers. All providers of MA dental services in the Commonwealth of Pennsylvania had to be credentialed before they could perform an MA service and bill for MA services provided under their NPI number.

67.     On or about October 31, 2012 through on or about November 9, 2012, MCO #1 (through TPA #1) and MCO #2, provided notice to defendant BHASKAR SAVANI, and SAVANI GROUP controlled dental practices, specifically Allied Orthodontics PC ("Allied Orthodontics") and A+ Oral Surgery Specialty Care PC ("A+ Oral Surgery"), American Family Dental Care PC  ("AFDC"), Advanced Family Dentistry, and Smile Krafters PC, that their Medicaid contracts with the MCOs would be terminated effective between on or about December 31, 2012 and on or about January 7, 2013. The terminations were effected following MCO audits

21

of SAVANI GROUP dental practice billings.

68.     After the termination of SAVANI GROUP dental practices, Person #3 and defendant AMEN DHYLLON, using companies they incorporated to appear to be independent of defendant BHASKAR SAVANI and the SAVANI GROUP, fraudulently obtained Medicaid insurance contracts on behalf of the SAVANI GROUP that defendant BHASKAR SAVANI and the SAVANI GROUP could not obtain under their true identities.

69.     As described below, the SAVANI GROUP, through defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, and AMEN DHYLLON, and Person #3, and others known and unknown to the grand jury, engaged in a pervasive scheme to defraud Medicaid though nominee company ownership. After defendant BHASKAR SAVANI and his affiliated SAVANI GROUP dental practices had their Pennsylvania Medicaid contracts terminated by MCO #1 and MCO #2, defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI devised a scheme to use nominee owners of "on paper" dental practices to obtain and continue to profit from Medicaid contracts with MCO #1 and MCO #2 despite having been terminated from contracts with those MCOs.

70.     Defendant SUNIL PHILIP opened companies and prepared tax returns for entities involved in the scheme at the direction of defendant ARUN SAVANI, and with the assistance of Person #1 and others both known and unknown to the grand jury.

71.     Through use of Person #3's nominee corporation, Smilekrafters Dental LLC, the SAVANI GROUP continued to profit from Medicaid contracts with MCO #1 despite that the SAVANI GROUP's dental practices were prohibited from billing Medicaid through MCO #1 after on or about December 31, 2012. Once the SAVANI GROUP realized the nominee company scam went undetected, the SAVANI GROUP used additional nominee companies

22

incorporated by Person #3 and defendant AMEN DHYLLON to obtain additional Medicaid contracts with MCO #1 and MCO #2, to credential their existing locations under these fraudulently obtained contracts, and to continue to profit from these contracts despite the terminations through at least in or about November 2021.

72.     As part of this scheme, the SAVANI GROUP, at the direction of defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, and AMEN DHYLLON, and with the assistance of Person #1 and Person #3, other associates of the Enterprise, and others both known and unknown to the grand jury, caused Medicaid contracts to be fraudulently secured and claims to be submitted to MCO #1 and MCO #2 for Smilekrafters Dental LLC, Advantage Dental, and Faces & Braces ("F&B") to conceal defendant BHASKAR SAVANI's and the SAVANI GROUP's control of these companies. In doing so, the SAVANI GROUP continued to profit from the Medicaid contracts despite the terminations.

73.     Although Smilekrafters Dental LLC and Advantage Dental were owned "on paper" by Person #3, and F&B was owned "on paper" by defendant AMEN DHYLLON, the practices were controlled by the SAVANI GROUP. The "on paper" corporations were created at the direction of defendants BHASKAR SAVANI and ARUN SAVANI for the sole purpose of fraudulently obtaining Medicaid contracts with MCO #1 and MCO #2.

74.     Proceeds of this scheme were diverted for the personal use and benefit of associates of the Enterprise including defendants BHASKAR SAVANI, ARUN SAVANI and NIRANJAN SAVANI, after being transferred through numerous SAVANI GROUP controlled bank accounts to conceal the source of the illicit funds.

75.     From in or about September 2014 through in or about September 2018, the SAVANI GROUP, through Smilekrafters Dental LLC and Advantage Dental, billed MCO #1 and

23

MCO #2 approximately $175 million for MA services provided and were paid approximately $40

million by Medicaid based on fraudulently obtained contracts.

76.     From in or about April 2013 through in or about December 2021, the

SAVANI GROUP, through F&B, billed MCO #1 and MCO #2 at least approximately $190

million for MA services provided and was paid at least approximately $40 million by Medicaid

based on fraudulently obtained contracts.

<u>Supervisory Billing Fraud</u>

77.     To allow dentists to begin billing for Medicaid services as soon as they

started working for the SAVANI GROUP, and to bypass the somewhat lengthy process for being

credentialed both by the Commonwealth of Pennsylvania and an MCO to become legally eligible

to serve the MA population, the SAVANI GROUP had a long-time practice of defrauding

Medicaid through illegal "supervisory billing."

78.     Through this unlawful practice, and at the direction of defendants

BHASKAR SAVANI and ARUN SAVANI, and with the assistance of defendant

ALEKSANDRA RADOMIAK, and others both known and unknown to the grand jury, the

SAVANI GROUP allowed uncredentialed dentists to service MA patients and to bill for their

services as if the services were provided by a credentialed dentist, by billing the services using the

NPI number of a credentialed dentist who did not perform the MA service. In some cases, the

service agreement between the SAVANI GROUP and the "supervisory" dentist acknowledged the

"supervisory billing" arrangement and provided for the "supervisory" dentist to receive as a

kickback a portion of the gross receipts of the uncredentialed dentist billing under their NPI

number.

79.     Defendants NIRANJAN SAVANI and AMEN DHYLLON, and Person #3

24

were dentists who allowed their NPI numbers to be used for "supervisory billing."

80.     Through this practice, SAVANI GROUP dentists, including defendant NIRANJAN SAVANI, had MA services billed under his NPI number for service dates on which they were physically outside the United States.

81.     MCO #3 was a managed care organization in Pennsylvania that helped administer the Pennsylvania Medicaid program. It worked with TPA #3.

82.     MCO #3 contracted with SAVANI GROUP dental practice American Family Dentistry ("AFD"), and defendant NIRANJAN SAVANI was credentialed under this contract to perform MA services.

83.     As part of the "supervisory billing" fraud scheme, in which services performed by one dentist were billed under the NPI number of a "supervising" dentist either because the dentist actually performing the services was uncredentialed or because the "supervising" dentist had a more lucrative fee arrangement, SAVANI GROUP dental companies billed the Pennsylvania Medicaid program under the AFD contract with MCO #3 for MA services provided under the NPI number of defendant NIRANJAN SAVANI, who was traveling outside of the United States when the services were allegedly performed.

84.     From in or about January 2014 through in or about March 2018, the SAVANI GROUP dental companies listed below billed for services under defendant NIRANJAN SAVANI's NPI number while defendant NIRANJAN SAVANI was outside of the United States:

| Billing Entity | Practice NPI | Owner |
|---|---|---|
| A+ Family Dental Care, PC | 1962669507 | BHASKAR SAVANI |
| A-1 Family Dental Care, PC | 1336306729 | BHASKAR SAVANI |
| Advanced Family Dentistry, PC | 1508023995 | BHASKAR SAVANI |
| American Family Dental Care, PC | 1154588549 | BHASKAR SAVANI |

85.     From in or about January 2014 through in or about March 2018, approximately 2,587 claims for dental services were submitted to Pennsylvania Medicaid, seeking reimbursement of approximately $300,000, and falsely claiming that defendant NIRANJAN SAVANI was the dentist who performed services for MA beneficiaries; when defendant NIRANJAN SAVANI was not in the United States at the time the billed procedures were performed.

The Money Laundering Scheme

86.     From at least in or about 2013 through the present, the SAVANI GROUP controlled more than 300 bank accounts related to the operation of their businesses and the perpetration of their fraud schemes. A small number of the accounts were personal bank accounts, while the majority of bank accounts were tied to the SAVANI GROUP's numerous business entities.

87.     Person #1, and other individuals who worked with Person #1 and for the SAVANI GROUP, and who are known to the grand jury, were directed by defendants BHASKAR SAVANI and ARUN SAVANI to transfer the fraud proceeds deposited in the Smilekrafters Dental LLC, Advantage Dental, and F&B bank accounts to other SAVANI GROUP-controlled bank accounts. Through these transactions, the SAVANI GROUP engaged in monetary transactions of criminally-derived property in amounts greater than $10,000 and concealed the nature, location, source, ownership and control of the funds to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

88.     In furtherance of the money laundering conspiracy, defendant SUNIL PHILIP, Person #1 and Person #2, and others known and unknown to the grand jury, at the

direction of defendants BHASKAR SAVANI and ARUN SAVANI, registered, opened and

controlled numerous entities and more than 300 bank accounts at Conestoga Bank, Beneficial

Bank and TD Bank NA, including, but not limited to, the following:

| Account Name | Bank | Account Number ending in |
|---|---|---|
| Smilekrafters Dental LLC | Conestoga/Beneficial Bank<br>TD Bank NA | 1223<br>4905 |
| Smile Krafters PC | Conestoga/Beneficial Bank | 1425 |
| Advantage Dental PC | TD Bank NA | 4880 |
| Faces & Braces Inc. | Conestoga/Beneficial Bank<br>TD Bank NA | 3146<br>4939 |
| United Dentistry PC | Conestoga/Beneficial Bank<br>TD Bank NA | 0657<br>4947 |
| American Dental Management PC | Conestoga/Beneficial Bank<br>TD Bank NA | 9717<br>6481 |
| American Dental Management Group LLC | Conestoga/Beneficial Bank<br>TD Bank NA | 0350<br>6499 |
| Allied Orthodontics PC | Conestoga/Beneficial Bank | 1160 |
| A+ Oral Surgery Specialty Care PC | Conestoga/Beneficial Bank | 2971 |
| American Family Dental Care PC | Conestoga/Beneficial Bank | 7365 |
| Lancaster Dental Arts PC | Conestoga/Beneficial Bank | 1626 |
| A+ Family Dental Care PC | Conestoga/Beneficial Bank | 6759 |
| A + Pediatric Dental Specialty Care PC | Conestoga/Beneficial Bank | 7415 |
| Advanced Family Smile Care PC | Conestoga/Beneficial Bank | 4145 |
| Denta Depot LLC | Conestoga/Beneficial Bank<br>TD Bank NA | 0664<br>5531 |
| American Management Group LLC | Conestoga/Beneficial Bank | 1914 |
| Dentaweb LLC | Conestoga/Beneficial Bank<br>TD Bank NA | 9495<br>6018 |
| A-1 Enterprise LLC | Conestoga/Beneficial Bank<br>TD Bank NA | 4012<br>1813 |
| Bhaskar Savani | TD Bank NA | 2329 |
| Bhaskar Savani and spouse | Conestoga/Beneficial Bank | 3923 |
| Arun Savani | Conestoga/Beneficial Bank<br>TD Bank NA | 3907<br>2311 |
| Niranjan Savani and spouse | Conestoga/Beneficial Bank | 3949 |
| Niranjan Savani | TD Bank NA | 2353 |

89.     Conestoga Bank, Beneficial Bank, and TD Bank were insured by the

Federal Deposit Insurance Corporation.

90.     It was part of the conspiracy that, during all times relevant to the conspiracy, Person #1 had access to all bank accounts in the name of Smilekrafters Dental LLC, Smile Krafters PC, Advantage Dental PC, F&B, United Dentistry, ADM PC, and ADMG LLC. Other persons who worked with Person #1 and for the SAVANI GROUP, and who are known to the grand jury, also had access to these bank accounts and often used Person #1's credentials to log into the accounts.

91.     It was part of the conspiracy that the SAVANI GROUP used its headquarters located in Fort Washington, Pennsylvania, as the registered address associated with the bank accounts for Smile Krafters PC, United Dentistry, ADM PC, and ADMG LLC.

92.     At the direction of defendants BHASKAR SAVANI and ARUN SAVANI, Person #1, and others who worked with Person #1 and for the SAVANI GROUP and who are known to the grand jury, conducted most, if not all, of the monetary transfers out of the Smilekrafters Dental LLC, Smile Krafters PC, Advantage Dental, United Dentistry, and F&B, accounts and into the other SAVANI GROUP-controlled accounts. Defendants BHASKAR SAVANI and ARUN SAVANI directed these transfers while located in the SAVANI GROUP headquarters in Fort Washington, Pennsylvania. Further, Person #1, and the others who worked with Person #1 and for the SAVANI GROUP, had offices at the headquarters location. The majority of monetary transfers were made from Fort Washington, Pennsylvania headquarters.

Smilekrafters Dental LLC and Advantage Dental PC

93.     Starting in or about January 2013 through in or about May 2018, Smilekrafters Dental LLC received insurance claim reimbursements, including Medicaid reimbursements through the Smilekrafters Dental LLC contract with MCO #1. These reimbursements were proceeds from the SAVANI GROUP's health care wire fraud scheme.

28

MCO #1, through TPA #2, deposited Medicaid reimbursements into Smilekrafters Dental LLC accounts ending in 1223 and 4905. Though Person #3, the "on paper" owner of Smilekrafters Dental LLC, was an authorized signer on these bank accounts, the accounts were controlled by the SAVANI GROUP and Person #3 never exercised control over the accounts.

94.     From on or about May 8, 2015 through on or about May 31, 2018, Advantage Dental PC received Medicaid reimbursements through the contract that Person #3 and Advantage Dental PC secured with MCO #1. The reimbursements related to the Advantage Dental PC Medicaid contract were the proceeds of the SAVANI GROUP's health care wire fraud scheme. MCO #1, through TPA #2, deposited these funds into Advantage Dental PC accounts ending in 4204 and 4880. Though Person #3 was an authorized signer on these bank accounts, the accounts were controlled by the SAVANI GROUP, and Person #3 never exercised control over the accounts.

95.     In or about 2015, defendant SUNIL PHILIP incorporated United Dentistry in the name of Person #3. United Dentistry did not conduct any business, had no employees, and did not have a physical office space.

96.     Though Person #3 was an authorized signer on United Dentistry accounts ending in 0657 and 4947, the bank accounts were controlled by the SAVANI GROUP. Person #3 did not exercise control over the accounts.

97.     In furtherance of the scheme to conceal the funds that were generated by fraudulently-obtained Medicaid contracts, the Medicaid payments were moved through various SAVANI GROUP controlled accounts, comingled with other funds, and then dispersed to SAVANI GROUP entities and to the personal accounts of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, to further the interests of the Enterprise and for the

29

personal use of defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, and others known and unknown to the grand jury.

98.     The following shows the general movement of fraud proceeds by year, which were comingled with other funds to conceal and disguise the nature, location, source, ownership, and control of the health care fraud proceeds, and to launder those proceeds to the SAVANI GROUP to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.[3]

a.     Smilekrafters Dental LLC ("SK") - 2013

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 | Amount of Medicaid payments obtained by fraud | Transfers from account ending in 1223 to account ending in 1425 | Transfers of comingled funds from account ending in 1425 to SAVANI GROUP entities and personal SAVANI accounts |
|---|---|---|---|---|
| SK | $1.2 MM | $ 770,000 | $1.0 MM | $ 6.1 MM |

For the period in or about 2013, the SAVANI GROUP transferred approximately $6.1 million from account ending in 1425 to other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

---

[3]     In all instances, millions are designated as "MM" and all numbers are approximate.

b.      Smilekrafters Dental LLC ("SK") - 2014

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 | Amount of Medicaid payments obtained by fraud | Transfers from account ending in 1223 to account ending in 1425 | Transfers of comingled funds from account ending in 1425 to SAVANI GROUP entities and personal SAVANI accounts |
|---|---|---|---|---|
| SK | $3.0 MM | $1.8 MM | $3.0 MM | $8.9 MM |

For the period in or about 2014, the SAVANI GROUP transferred approximately

$8.9 million from account ending in 1425 to other bank accounts associated with the SAVANI

GROUP and the Enterprise. These transactions were conducted to further the interests of the

Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and

NIRANJAN SAVANI.

c.      Smilekrafters Dental LLC ("SK"); Advantage Dental PC ("ADV") - 2015

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 and ADV account ending in 4204 | Amount of Medicaid payments obtained by fraud | Transfers from account ending in 1223 to account ending in 1425 | Transfers from accounts ending in 1223 and 4204 to account ending in 0657 | Transfers of comingled funds from account ending in 1425 to SAVANI GROUP entities and personal SAVANI accounts | Transfers of comingled funds from account ending in 0657 to account ending in 9717 | Transfers of comingled funds from account ending in 9717 to account ending in 0350 to SAVANI Group entities and personal SAVANI accounts |
|---|---|---|---|---|---|---|---|
| SK | $4.7 MM | $1.1 MM | $2.0 MM | | $4.9 MM | | |
| SK | $4.7 MM | $1.3 MM | | $2.6 MM | | | |
| ADV | $848,000 | $848,000 | | $750,000 | | | |
| SK and ADV | | | | | | $3.5 MM | $10.6 MM |

From in or about January 2015 through in or about May 2015, the SAVANI GROUP transferred approximately $4.9 million from account ending in 1425 to other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI. From in or about May 2015 through in or about December 2015, the SAVANI GROUP transferred approximately $3.5 million from account ending in 0657 to ADM PC account ending in 9717, and then transferred approximately $10.6 million from ADM PC account ending in 9717 to ADMG LLC account ending in 0350. In addition, another approximately $12.2 million was transferred from ADM PC account ending in 9717 to other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

       d.     Smilekrafters Dental LLC ("SK") and Advantage Dental PC ("ADV") - 2016

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 and ADV account ending in 4204 | Amount of Medicaid payments obtained by fraud | Transfers from accounts ending in 1223 and 4204 to account ending in 0657 | Transfers from account ending in 0657 to account ending in 9717 which were comingled with other funds | Transfers of comingled funds from account ending in 9717 to account ending in 0350 | Transfers of comingled funds from account 9717 to SAVANI GROUP entities and Personal SAVANI accounts |
|---|---|---|---|---|---|---|
| SK | $5.8 MM | $2.3 MM | $4.9 MM | | | |
| ADV | $2.2 MM | $2.3 MM | $2.0 MM | | | |
| SK and ADV | | | | $8.3 MM | $15.5 MM | $18.6 MM |

For the period in or about 2016, the SAVANI GROUP transferred approximately $15.5 million from account ending in 9717 to ADMG LLC account ending in 0350; and approximately $18.6 million from account ending in 9717 to other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

e.    Smilekrafters Dental LLC ("SK"); Advantage Dental PC ("ADV") - 2017

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 and ADV account ending in 4204 | Amount of Medicaid payments obtained by fraud | Transfers from accounts ending in 1223 and 4204 to account ending in 0657 | Transfers from account ending in 0657 to account ending in 9717 which were comingled with other funds | Transfers of comingled funds from account ending in 9717 to account ending in 0350 | Transfers of comingled funds from account ending in 9717 to SAVANI GROUP entities and personal SAVANI accounts |
|---|---|---|---|---|---|---|
| SK | $4.9 MM | $1.9 MM | $4.9 MM | | | |
| ADV | $2.0 MM | $2.0 MM | $2.0 MM | | | |
| SK and ADV | | | | $7.1 MM | $14.2 MM | $8.5 MM |

For the period in or about 2017, the SAVANI GROUP transferred approximately $7.1 million from account ending in 0657 to ADM PC account ending in 9717, and then transferred approximately $14.2 million from account ending in 9717 to ADMG LLC account ending in 0350; and approximately $8.5 million from ADM PC account ending in 9717 to other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were

33

conducted to further the interests of the Enterprise and for the personal use of defendants

BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

f.      Smilekrafters Dental LLC ("SK"); Advantage Dental PC ("ADV") - 2018

| Entity | Medicaid and other dental insurance payments to SK account ending in 1223 and ADV account ending in 4204 | Amount of Medicaid payments obtained by fraud | Transfers from accounts ending in 1223 and 4204 to account ending in 0657 | Transfers from account ending in 0657 to account ending in 9717 which were comingled with other funds | Transfers of comingled funds from account ending in 9717 to account ending in 0350 | Transfers of comingled funds from account ending in 9717 to SAVANI GROUP entities and personal SAVANI accounts |
|---|---|---|---|---|---|---|
| SK | $2.1 MM | $720,000 | $2.0 MM | | | |
| ADV | $890,000 | $880,000 | $890,000 | | | |
| SK and ADV | | | | $3.0 MM | $5.3 MM | $11.2 MM |

For the period in or about 2018, the SAVANI GROUP transferred approximately

$3 million from account ending in 0657 to ADM PC account ending in 9717, and then

transferred approximately $5.3 million from account ending in 9717 to ADMG LLC account

ending in 0350; and approximately $11.2 million from ADM PC account ending in 9717 to other

bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were

conducted to further the interests of the Enterprise and for the personal use of defendants

BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

Faces & Braces Inc. ("F&B")

99.      From on or about March 1, 2013 through on or about at least October 18,

2018, F&B received insurance claim reimbursements, including reimbursements from MCO #1

and MCO #2, under fraudulently obtained Medicaid contracts with defendant AMEN DHYLLON. These reimbursements were proceeds from the SAVANI GROUP's health care wire fraud scheme.

100.    In furtherance of the scheme to conceal the fraud proceeds, the SAVANI GROUP moved the fraudulently obtained Medicaid payments through various SAVANI GROUP controlled accounts, comingled the payments with other funds, and then dispersed the proceeds to SAVANI GROUP entities to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

101.    The following shows the general movement of fraud proceeds by year from the F&B scheme, which were comingled with other funds to conceal and disguise the nature, location, source, ownership, and control of the proceeds and to launder the proceeds to the SAVANI GROUP to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.[4]

---

[4]    In all instances, millions are designated as "MM" and all numbers are approximate.

g.      Faces & Braces ("F&B") - 2013 through 2018

| Year | Medicaid and other dental insurance payments to account ending in 3146 | Medicaid and other dental insurance payments to account ending in 4939 | Amount of Medicaid payments obtained by fraud | Transfers from account ending in 3146 to account ending in 9717 with comingled funds | Transfers from account ending in 9717 to account ending in 0350 with comingled funds | Transfers from account ending in 4939 to account ending in 6481 with comingled funds | Transfers from account ending in 6481 to account ending in 6499 with comingled funds |
|------|------|------|------|------|------|------|------|
| 2013 | $200,000 | | $100,000 | | | | |
| 2014 | $1.7 MM | | $549,000 | | | | |
| 2015 | $3.8 MM | | $1.9 MM | $2.1 MM | $10.6 MM | | |
| 2016 | $5.1 MM | | $2.1 MM | $5.1 MM | $15.5 MM | | |
| 2017 | $5.1 MM | | $2.4 MM | $5.1 MM | $8.0 MM | | |
| 2018 | $350,000 | $3.5 MM | $1.88 MM | $340,000 | $575,000 | $3.5 MM | $10.5 MM |

For the period in or about March 2013 through in or about May 2015, once the proceeds from the SAVANI GROUP's health care wire fraud scheme were received in account 3146, the fraud proceeds were then transferred into other bank accounts associated with the SAVANI GROUP and the Enterprise. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI. From in or about May 2015 through on or about December 31, 2015, the SAVANI GROUP transferred approximately $2.1 million from account ending in 3146 to ADM PC account ending in 9717, and then transferred approximately $10.6 million from account ending in 9717 to ADMG LLC account ending in 0350. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

From in or about 2016, the SAVANI GROUP transferred approximately $5.1 million from account ending in 3146 to ADM PC account ending in 9717, and then transferred

approximately $15.5 million from account ending in 9717 to ADMG LLC account ending in 0350. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

From in or about 2017, the SAVANI GROUP transferred approximately $5.1 million from account ending in 3146 to ADM PC account ending in 9717, and then transferred approximately $8 million from account ending in 9717 to ADMG LLC account ending in 0350. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

From in or about January 2018 through in or about March 2018, the SAVANI GROUP transferred approximately $340,000 from account ending in 3146 to ADM PC account ending in 9717, and then transferred approximately $575,000 from account ending in 9717 to ADMG LLC account ending in 0350. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI. From in or about March 2018 through on or about October 18, 2018, the SAVANI GROUP transferred approximately $3.5 million from account ending in 4939 to ADM PC account ending in 6481, and then transferred approximately $10.5 million from account ending in 6481 to ADMG LLC account ending in 6499. These transactions were conducted to further the interests of the Enterprise and for the personal use of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI.

<u>The Tax Wire Fraud Scheme</u>

102.    From on or about January 1, 2013 through on or about April 15, 2018, defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, and SUNIL PHILIP, with the assistance of Person #1 and Person #2, and others known and unknown to the grand jury,

37

devised and executed a scheme to defraud the United States Treasury by electronically submitting fraudulent personal tax returns to the United States Department of Treasury through the Internal Revenue Service.

103.   As part of the scheme, defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, and SUNIL PHILIP, with the assistance of Person #1, Person #2, and others known to the grand jury, paid numerous personal expenses of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, with business funds, failed to report those funds as income on their personal tax returns, and fraudulently expensed those personal expenses through SAVANI GROUP companies as business expenses.

104.   By claiming personal expenses as business expenses on corporate tax returns, those tax returns thus overstated expenses, which lowered business income and made the returns false. The business income (which was understated because of the overstated expenses) flowed through to the personal tax returns of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and thereby lowered their personal income, thus making those returns false as well.

105.   At the direction of defendant ARUN SAVANI, and with the knowledge and assent of defendants BHASKAR SAVANI and NIRANJAN SAVANI, Person #1 and Person #2 issued payment for numerous personal expenses of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, their wives, and their children, from various SAVANI GROUP bank accounts.

106.   Person #1 and Person #2 received explicit instructions, generally from defendant ARUN SAVANI, regarding which business accounts to use to pay particular personal expenses as those bills were presented for payment.

38

107.    Defendants ARUN SAVANI and SUNIL PHILIP further instructed Person #1 and Person #2, and other employees and associates of the Enterprise, as to the manner in which payments for personal expenses should be expensed through SAVANI GROUP companies as fraudulent business expenses.

108.    Denta Depot LLC was a purported dental supply company owned by defendant NIRANJAN SAVANI and controlled and operated by the SAVANI GROUP.

109.    From in or about January 2013 through in or about December 2017, bills for hundreds of thousands of dollars of personal American Express charges were paid by SAVANI GROUP companies, including Denta Depot LLC.

110.    Defendant SUNIL PHILIP kept QuickBooks records for SAVANI GROUP companies using bank statements and Excel spreadsheets provided to him by Person #1, Person #2, and defendant ARUN SAVANI. The bank statements showed numerous monthly intercompany transfers of money and evidenced that the "sales" of certain SAVANI GROUP companies, such as EZ Biotek, were nothing more than intercompany transfers of money. The spreadsheets tracked SAVANI GROUP income and expenses, and personal expenses of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI that were expensed through SAVANI GROUP businesses. Those personal expenses included, among other things, improvements on a vacation property in Hawaii; payments to a tutoring service; payments to an elite, private college preparatory school; college tuition payments, landscaping, pool cleaning and housekeeping at private residences; personal American Express charges; car payments for personal cars of family members; and electric, water, sewer, and tax payments for private residences.

111.    Defendant SUNIL PHILIP used the bank statements and Excel

39

spreadsheets to categorize and enter the false expenses in the corporate QuickBooks records. The Excel spreadsheets showed expenses that were clearly personal that defendant PHILIP then fraudulently categorized in the corporate QuickBooks records as business expenses.

112.    For the tax years from in or about 2013 through in or about 2017, defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, at the direction of defendants ARUN SAVANI and SUNIL PHILIP, used SAVANI GROUP companies to fraudulently claim personal expenses as business expenses including but not limited to the companies listed below:

a.    In or about 2013, SAVANI GROUP business tax returns overstated business expenses by a total of at least $250,000, including the following companies which had overstated expenses in their tax returns: AAA Denta Lab LLC, Advanced Family Dentistry PC, Allied Orthodontics, American Real Estate Group LLC, Denta Depot LLC, Harleysville Real Estate Group LP, Horsham Real Estate Group LP, and Smile Krafters PC.

b.    In or about 2014, SAVANI GROUP business tax returns overstated their business expenses by a total of at least $890,000, including the following companies which had overstated expenses in their tax returns: A-1 Enterprise LLC, A-1 Family Dental Care PC, AAA Denta Lab LLC, Advanced Family Dentistry PC, Advanced Family Smile Care PC, Allied Orthodontics PC, American Family Dental Care PC, American Management Group LLC, American Real Estate Group LLC, American Unity Dental PA, Denta Depot LLC, EZ Biotek LLC, Harleysville Real Estate Group LP, Horsham Real Estate Group LP, Presidential Plan LLC, and Smile Krafters PC.

c.    In or about 2015, SAVANI GROUP business tax returns overstated their business expenses by a total of at least $1.3 million, including the following

40

companies which had overstated expenses in their tax returns: A-1 Enterprise LLC, AAA Denta Lab LLC, Advanced Family Dentistry PC, Advance Family Smile Care PC, Allied Orthodontics PC, ADMG LLC, ADM PC, American Family Dental Care PC, American Management Group LLC, American Real Estate Group LLC, American Unity Dental PA, Denta Depot LLC, Dentaweb LLC, EZ Biotek LLC, Horsham Real Estate Group LP, and Presidential Plan LLC.

        d.     In or about 2016, SAVANI GROUP business tax returns overstated their business expenses by a total of over $900,000, including the following companies which had overstated expenses in their tax returns: A-1 Enterprise LLC, A-1 Family Dentistry PC, AAA Denta Lab LLC, AAA Signature Smile PC, Advanced Family Dentistry PC, Allied Orthodontics PC, ADMG LLC, ADM PC, American Management Group LLC, American Real Estate Group LLC, Denta Depot LLC, Dentaweb LLC, EZ Biotek LLC, Horsham Real Estate Group LP, and Presidential Plan LLC.

        e.     In or about 2017, SAVANI GROUP business tax returns overstated their business expenses by a total of over $740,000, including the following companies which had overstated expenses in their tax returns: AAA Dentalab LLC, Advanced Family Dentistry LLC, Allied Orthodontics PC, ADMG LLC, ADM PC, American Management Group LLC, American Real Estate Group LLC, Denta Depot LLC, Dentaweb LLC, EZ Biotek LLC, Horsham Real Estate Group LP, and Presidential Plan LLC.

        113.     For tax years 2013 through 2017, defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI failed to report approximately $4.1 million of corporate pass-through income from SAVANI GROUP companies on their personal form 1040 tax returns, causing a tax revenue loss to the United States Treasury of approximately $1.5 million.

114.    The tax returns for SAVANI GROUP businesses and defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI for tax years 2013 through 2017 were filed electronically and passed via electronic wire transmission through servers located in Martinsburg, West Virginia or Memphis, Tennessee.

<u>The Osseolink Mail Fraud Scheme</u>

115.    Osseolink USA LLC ("Osseolink") was a business corporation owned by EZ Biotek and organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at Fort Washington, in the Eastern District of Pennsylvania.

116.    The Food and Drug Administration ("FDA") was an agency of the United States government responsible for protecting the health and safety of the public by assuring, among other things, that medical devices intended for use in the treatment of humans are safe and effective for their intended uses and that the labeling of such devices bears true and accurate information. Pursuant to this statutory mandate, the FDA regulated the manufacture, labeling, and shipment in interstate commerce of any such devices.

117.    Under the Federal Food, Drug and Cosmetic Act (Title 21, United States Code, §§ 301-397, the "FDCA"), and pursuant to Title 21, United States Code § 321(h), the term "device" included dental implants, which are medical devices used to replace missing teeth.

118.    Pursuant to the FDCA, every manufacturer of certain devices. including dental implants, was required to obtain "clearance" or "approval" from the FDA prior to marketing its device.

119.    All medical devices marketed in interstate commerce in the United States were categorized into one of three regulatory classes under the FDCA: Class III devices (most stringent), Class I devices (least stringent), and Class II devices (between Class I and Class III).

The classification assigned to each device was determined by the degree of regulatory control necessary to provide reasonable assurance of the safety and effectiveness of that device for its intended use.

120.    Devices introduced into commercial distribution in the United States after May 28, 1976 (after certain amendments to the FDCA), were automatically assigned to Class III. Such Class III devices could not legally be marketed in the United States until the manufacturer submitted a pre-market approval ("PMA") application to the FDA, and the FDA approved that application. The FDA would not grant pre-market approval unless the information in the PMA application provided the FDA with reasonable assurance that the device was safe and effective when used according to its labeling.

121.    A manufacturer could remove a device from automatic assignment to Class III, and thereby avoid the PMA process, in one of two ways. The first was to obtain an order from the FDA reclassifying the device into Class I or Class II. The second was to obtain an order from the FDA that the device was "substantially equivalent" to a legally marketed device (called a "predicate device") for which premarket approval was not required.

122.    A manufacturer that took the alternate route of seeking a determination of "substantial equivalence" was required to submit to the FDA "pre-market notification" (also known as a "510(k)") no later than ninety days before the manufacturer intended to introduce the device into interstate commerce. If the FDA made a finding of "substantial equivalence" based on the manufacturer's pre-market notification, the device was then "cleared" for marketing and could be marketed only for the intended use stated on the label as cleared by the FDA.

123.    A manufacturer was required to file a new 510(k) for its previously cleared device if the device was to be changed or modified in a way that could significantly affect

43

its safety or effectiveness; that is, if the manufacturer was planning a significant change to the device's design, material, chemical composition, or manufacturing process. A new 510(k) pre-market notification was also required for a planned major change or modification in the intended use of a device.

124.    Through an expedited, streamlined version of the 510(k) process, a manufacturer seeking to obtain FDA clearance to market a modified version of its own, previously cleared device could submit to the FDA a pre-market notification (also known as a "Special 510(k)") no later than thirty days before the manufacturer intended to introduce the modified device into interstate commerce. If the FDA made a finding that the manufacturer's modified device was "substantially equivalent" to the manufacturer's original device, the modified device was then cleared for marketing and could be marketed only for the intended use stated on the label as cleared by the FDA. The Special 510(k) process could not be used when the proposed change or modification to the device affected the intended use of the device.

125.    Approval of a PMA application and clearance of a 510(k) or Special 510(k) premarket notification were separate routes for obtaining the FDA's approval to market a medical device. Until a device obtained one of these two forms of approval, it could not legally be distributed in interstate commerce.

126.    With regard to an investigational device, that is a device that is the subject of a clinical study designed to evaluate the safety and effectiveness of the device, a sponsor (in this case manufacturer), investigator, or any person acting on their behalf, was not permitted to promote or test market an investigational device until after the FDA had approved the device for commercial distribution, and could not represent that the investigational device was safe and effective for the purposes for which it is being investigated, per 21 C.F.R. § 812.7(a), (d).

127.     The immediate packaging of an investigation device was required to bear a label containing certain information, including: the name and place of business of the manufacturer, packer, or distributor in conformance with regulation; the quantity; and the statement "CAUTION—Investigational device. Limited by Federal (United States) law to investigational use." The label or other labeling also had to describe "all relevant contraindications, hazards, adverse effects, interfering substances or devices, warnings, and precautions," per 21 C.F.R. § 812.5(a). The labeling of the investigational device also could not bear "any statement that is false or misleading in any particular and shall not represent that the device is safe or effective for the purposes for which it is being investigated," per 21 C.F.R. § 812.5(b).

128.     A device may be deemed misbranded if it, among other things, bore false and misleading labeling, or if the labeling did not bear adequate directions for its use or adequate warnings.

129.     Under the FDCA, a device was adulterated, among other ways, if it was introduced into interstate commerce without receiving the required FDA approval, per 21 U.S.C. § 351(f)(1)(B).

<u>FDA-Cleared Osseolink Dental Implant System</u>

130.     Company #1, known to the grand jury, was a dental implant company owned by Person #4 and Person #6, both known to the grand jury. They designed and manufactured a dental implant system known as the Osseolink Dental Implant System, which they submitted to the FDA for 510(k) premarket clearance. Company #1 hired a consultant company that, among other things, helped medical device companies with FDA regulatory

45

compliance and market entry, to help prepare Company #1's FDA submission for Section 510(k)

clearance.

131.    On or about October 6, 2009, the FDA cleared Company #1's 510(k)

submission. The FDA concluded that the "Osseolink Dental Implant System" as described in the

510(k) premarket notification (of intent to market the device) was "substantially equivalent" to

legally marketed predicate devices, or to devices that do not require clearance through a

premarket approval application (PMA). The FDA's notice had the effect of permitting Company

#1 to market the Osseolink Dental Implant System, and "clear[ed]" the device for commercial

distribution ("the 2009 510K-Cleared Osseolink Dental Implant System"). Accordingly,

Company #1 marketed and sold the 2009 510(k)-Cleared Osseolink Dental Implant System in the

United States and in countries around the world.

<u>The SAVANI GROUP Purchased Company #1</u>

132.    In or around August 2015, the SAVANI GROUP formed Osseolink USA

LLC as a Pennsylvania Corporation located at the SAVANI GROUP headquarters in Fort

Washington, Pennsylvania. Osseolink USA LLC reported its business address to be 260 New

York Drive, Fort Washington, Pennsylvania. Defendant BHASKAR SAVANI was the President

and CEO of Osseolink USA LLC.

133.    In or around September 2015, Person #4 and Person #6 sold Company #1

to the SAVANI GROUP company EZ Biotek for approximately $500,000. Defendant ARUN

SAVANI executed the asset purchase agreement on behalf of EZ Biotek as its "Managing

Member." Other sale-related documents were signed on behalf of EZ Biotek by either defendant

ARUN SAVANI or defendant BHASKAR SAVANI. As part of the sale, Company #1's records,

goodwill, inventory, equipment, accounts receivable, and trade names were transferred to EZ Biotek.

134.    The SAVANI GROUP transferred the assets EZ Biotek received from Company #1 to the then-recently formed Osseolink USA LLC.

135.    As part of the Company #1 asset purchase transaction, Person #4 received a 20% equity stake in Osseolink USA LLC, as consideration for transferring all intellectual property in the design and to provide his "know-how" to the newly formed Osseolink USA LLC, which later included input into the development of a new product. Person #4 provided Osseolink USA LLC with his contacts at the regulatory consulting firm, his suppliers, and other relevant contacts. Person #4 also advised Osseolink USA LLC of the importance of following all applicable rules and regulations in the highly regulated medical device manufacturing and sales industry.

136.    Among others, defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, ALEKSANDRA RADOMIAK, and JON JULIAN, charged elsewhere in this indictment, and Person #4, and employees and contractors known to the grand jury, worked for the SAVANI GROUP in some capacity and on behalf of Osseolink USA LLC.

137.    Various SAVANI GROUP-affiliated companies booked expenses related to, and transferred money to bank accounts associated with, Osseolink USA LLC.

138.    From in or around September 2015 through at least in or about the late fall of 2018, Osseolink USA LLC marketed and sold the 2009 510(k)-Cleared Osseolink Dental Implant System.

139.    On or about February 29, 2016, defendant BHASKAR SAVANI sent a WhatsApp message stating that he purchased Osseolink USA LLC, touting that the brand had FDA approval.

140.    During the time that the SAVANI GROUP was actively marketing the 2009 510(k)-Cleared Osseolink Dental Implant System to its dentists, several SAVANI GROUP dentists and dental staff reportedly did not want to continue to use that system because of a perceived higher than expected failure rate, among other issues.

141.    More specifically, Person #7, known to the grand jury, had worked at a SAVANI GROUP dental practice until in or about 2017, stopped using the implants because they "didn't work." Person #7 was aware that defendant NIRANJAN SAVANI did not want to use Osseolink implants despite the SAVANI GROUP owning Osseolink USA, LLC.

142.    On or about October 26, 2016, defendant JON JULIAN placed an Osseolink 5.0 x 11 mm dental implant into Patient #1, known to the grand jury.

143.    On or about January 25, 2017, defendant JON JULIAN discovered that the implant failed to osseointegrate into the patient. Osseointegration referred to the firm anchoring of a dental implant by the growth of bone around it. Osseointegration was necessary for implant stability and is a prerequisite for long-term clinical success of an osseous (bone) implant. Defendant JULIAN later replaced the initial implant with an Osseolink 5.0 x 9 mm dental implant. This was the first of many Osseolink implants that failed to osseointegrate when placed in patients.

144.    Person #8, an employee of defendant JON JULIAN known to the grand jury, was aware of a failure rate among the 2009 510(k)-Cleared Osseolink Dental Implant

48

System placed in patients by JON JULIAN that was higher than the average failure rate typically expected industry-wide for dental implant devices.

145.    In or about September 2016, defendant BHASKAR SAVANI asked defendant JON JULIAN to be the "Dental Director" for the SAVANI GROUP dental education center known as The Dental Future Center, located at the SAVANI GROUP headquarters in Fort Washington. While The Dental Future Center was marketed as a "dental education facility," it also provided an opportunity for the SAVANI GROUP to promote and sell products, including its Osseolink dental implants.

146.    On or about December 26, 2016, defendant JON JULIAN entered into a "Service Agreement" with the SAVANI GROUP's AAA Signature Smile PC d/b/a The Dental Future Center.

147.    Under the agreement, defendant JULIAN was to be paid a commission on items promoted by Dental Future Center, including 5% of the marginalized collection amount for any Osseolink Dental Implant Systems sold. This provided a financial incentive for defendant JULIAN to sell Osseolink Dental Implant Systems. Defendant BHASKAR SAVANI signed the agreement on behalf of AAA Signature Smile d/b/a The Dental Future Center.

148.    In or about March 2017, defendant BHASKAR SAVANI on behalf of Osseolink USA LLC, hired Person #10, known to the grand jury, as its Dental/Medical Device Project Manager. Person #10's primary responsibilities included assisting Osseolink USA LLC in the development and launch of a new dental implant system, the Osseolink "Engage" dental implant system.

149.    Among other responsibilities, defendant BHASKAR SAVANI tasked Person #10 with handling FDA regulatory issues related to Osseolink USA LLC, including

preparing the "pre-market notification" (510(k)) related to the new Osseolink "Engage" dental implant system. Person#10's compensation package included a one-time bonus of $10,000 upon successful launch of the "Engage" implant, which included 510(k) clearance.

150.    From in or about 2016 through at least in or about the end of 2018, defendant BHASKAR SAVANI and Osseolink USA LLC sought to design and manufacture the Osseolink "Engage" dental implant system.

151.    There were important differences between the new Osseolink "Engage" implant and the 2009 510(k)-Cleared Osseolink dental implant, including in the thread design and the shape of the implant. Under FDA regulations, the new Osseolink "Engage" dental implant required FDA premarket approval or premarket notification (a new 510(k)) before marketing the implant and shipping it in interstate commerce.

152.    Defendant JON JULIAN was significantly involved in the design of the new Osseolink "Engage" dental implant system beginning as early as in or about December 2016 when defendant JULIAN discussed the aggressive thread and the tapered shape of the new implant in an email with Person #4.

The Osseolink "Engage" Prototype

153.    In or about May 2017, at the direction of defendant BHASKAR SAVANI, Person #10 contracted with Company #2, known to the grand jury, to machine "prototypes" or "samples" of the new Osseolink "Engage" dental implant system.

154.    As requested, Company #2 fabricated 100 pieces each of: dental implants of various sizes, two types of abutments, and the scan body. The work was completed in or around June 2017 and was identified with lot numbers 6327-01 through 6327-07 as reflected on

invoice numbers 3105 (dated on or about June 30, 2017) and 3110 (dated on or about July 11, 2017).

155.    Company #2 manufactured the new Osseolink Engage dental implant using preliminary drawings. The preproduction implant prototypes requested by Person #10 at the direction of defendant BHASKAR SAVANI were never intended for patient use. Person #10 kept records reflecting that a 510(k) submission to the FDA would be filed related to the new Osseolink "Engage" dental implant system. At all times, Person #10 was acting under the supervision and direction of defendant BHASKAR SAVANI.

156.    On or about January 11, 2018, Person #11 emailed Person #10 stating that Person #11 was returning failed implants.

157.    On or about March 22, 2018, Person #8 emailed defendant JON JULIAN to discuss discontinuing their use of the Osseolink implant owing to the failures they were experiencing. According to travel records, defendant JULIAN visited the SAVANI GROUP's Fort Washington headquarters multiple times in or about March 2018, including the day after this email was sent.

158.    On or about April 2, 2018, Osseolink USA LLC sent a package to Company #3, known to the grand jury, in Michigan (Company #3 packing slip Number 9409 dated on or about April 19, 2018) containing approximately 285 Engage implants without cover screw, "200-unit boxes", and 500 "universal" cover screws. In an email dated on or about April 16, 2018, Person #10 confirmed that these implants would not be used on human patients.

159.    On or about April 24, 2018, Person #10 sent an email to Company #3 approving the label plan for the implants and related parts referred to in paragraph 158. Part of the

approved label plan called for replacing a prior version's expiration date with the warning, "NOT FOR HUMAN USE."

160.    On or about April 30, 2018, Person #8 emailed Person #10, copying defendant JON JULIAN. Person #10 relayed defendant JULIAN's request to use the new implants as replacements for the failed devices rather than refund their account.

161.    On or about April 30, 2018, Person #10 replied to Person #8, copying defendant JON JULIAN and Person #11, agreeing to refund the failed implants using the "Engage" implants as replacements.

162.    On or about May 2, 2018, Person #10 sent a WhatsApp message to defendants BHASKAR SAVANI, NIRANJAN SAVANI, and JON JULIAN, and to Person #4 stating:

> I just wanted to notify everyone that our first sample of drivers arrived today. We have 2 more sets of samples (different materials) arriving by Friday. I will send you all samples of each driver along with some raw Implants (surface treated but not sterilized) to do some model testing. Please give me your feedback so we can alter design if we need to. Sterilized and packaged Implants will be available for next phase in testing.

Person #10 further stated that:

> Also, the raw Implant I am sending is a 3.5x15 mm size. It is our "worst-case scenario" Implant which means it's the weakest. Which is why most of our testing will be done on this Implant.

163.    On or about May 4, 2018, Company #3 shipped to Osseolink USA LLC approximately 285 sterilized, packaged, and labeled prototype/sample "Engage" dental implants, with "universal" screws. As requested by Person #10, at the direction of defendant BHASKAR SAVANI, the labeling read "NOT FOR HUMAN USE."

164.    On or about May 16, 2018, defendant NIRAJAN SAVANI, working at the SAVANI GROUP practice AAA Signature Smile PC, placed one of the Osseolink "Engage" implants labeled "NOT FOR HUMAN USE" (size 3.5 mm x 9.0 mm) (LOT 111666) in Patient #2, known to the grand jury. On Patient #2's informed consent form next to the "Osseolink Engage" label that reads, "NOT FOR HUMAN USE," was a hand-written note that stated, "# 5," a reference to "tooth number 5."

165.    On or about May 17, 2018, defendant NIRANJAN SAVANI sent an iMessage to defendant JON JULIAN stating, "First Osseolink engage" with a photograph of what appears to be an x-ray of the implant in the patient's mouth. Defendant JULIAN asked what size the implant was, and defendant NIRANJAN SAVANI responded "area #5 . . . 3.5."

166.    On or about May 18, 2018, defendant BHASKAR SAVANI was part of a WhatsApp group message with various individuals, including defendant NIRANJAN SAVANI, regarding "Osseolink India." Defendant BHASKAR SAVANI encouraged the formation of a company in India. Defendant NIRANJAN SAVANI responded that if the product was FDA-approved in the United States, it could be distributed in India with the same brand name and International Organization for Standardization (ISO).

167.    On or about May 25, 2018, defendant JON JULIAN traveled to the SAVANI GROUP headquarters to speak at The Dental Future Center. During this visit, Person #10 personally gave defendant JULIAN multiple "Engage" dental implants. These implants and drivers then moved in interstate commerce from Pennsylvania to South Carolina.

168.    On or about June 4, 2018, Person #10 sent an email to Person #8 stating that Person #8 had mailed via Federal Express (Tracking Number 7723 8739 8977) 15 packaged and sterilized Osseolink "Engage" implants at no cost as a refund for the 15 failed implants. The

FedEx shipping invoice (invoice number: 6-210-03666 for account number 3165-7182-4) notes that these implants were sent via standard overnight shipping, delivered on June 5, 2018. The sender was defendant BHASKAR SAVANI on behalf of Osseolink USA LLC, located at 260 New York Drive, Fort Washington, Pennsylvania. The intended recipient was defendant JON JULIAN on behalf of The Dental Retreat, located at Botanical Circle, Travelers Rest, South Carolina. These implants therefore moved in interstate commerce from Pennsylvania to South Carolina.

169.     On or about June 8, 2018, defendant NIRANJAN SAVANI, at the SAVANI GROUP dental practice AAA Signature Smile PC, placed a 3.5 mm x 13.0 mm (LOT 111668) prototype/sample "Engage" dental implant labeled "NOT FOR HUMAN USE" into Patient #3, known to the grand jury, who is also a dentist for the SAVANI GROUP.

170.     On or about June 8, 2018, Person #4 sent an email to Osseolink employee Person #10, copying defendants BHASKAR SAVANI and NIRANJAN SAVANI. In the email, Person #4 provided feedback for the "Engage" implant and driver prototypes.

171.     On or about June 9, 2018, defendant BHASKAR SAVANI responded to Person #4's June 8, 2018 email, copying defendant JON JULIAN, and noting that defendant JULIAN experienced similar issues.

172.     On or about June 9, 2018, continuing the same WhatsApp group message, referenced in paragraph 166, defendant BHASKAR SAVANI stated, "Let's start marketing our packed product here[.] Little bit expensive until we get proper volume so we can work quantity and manufacturing there[.]"

173.     On or about June 11, 2018, defendant JON JULIAN placed a total of four Osseolink "Engage" prototype/sample dental implants labeled "NOT FOR HUMAN USE" in

human patients. Specifically, defendant JULIAN placed one Osseolink "Engage" prototype/sample dental implant labeled "NOT FOR HUMAN USE" into Patient #4, known to the grand jury; and he placed three Osseolink "Engage" prototype/sample dental implants labeled "NOT FOR HUMAN USE" into Patient #5, known to the grand jury.

174.    Following those patient procedures, also on or about June 11, 2018, in a group WhatsApp chat with defendants BHASKAR SAVANI, NIRANJAN SAVANI, and JON JULIAN, the following exchange occurred:

> JON JULIAN: I put 4 Engage implants in today and the carrier pulled one out! I managed it ok but that is definitely an issue we have to solve.
>
> BHASKAR SAVANI: Please take some interest and let's finalize the design
>
> JON JULIAN: Ok I'll play with it this evening and by tomorrow maybe Nin and I can come up with a design that is more user friendly. Are you available anytime tomorrow Nin?

175.    On or about June 12, 2018, Person #10 memorialized defendant JON JULIAN's feedback for the Osseolink "Engage" prototype/sample dental implant in handwritten notes titled, "Julian Engage Feedback." This feedback included that the driver was slipping and suggested a different shape for the implant.

176.    On or about June 12, 2018, Person #8 sent an email to Person #10 (copying defendants JON JULIAN and ALEKSANDRA RADOMIAK and Person #11), which included at least one photograph of the prototype/sample "Engage" dental implant inventory in its box (Lot # 111668) at The Dental Retreat in Duncan, South Carolina. Person #8 asked Person #10 to include a packing slip going forward when Osseolink USA LLC ships implants. The implants in the picture moved in interstate commerce from Pennsylvania to South Carolina.

177.    On or about August 9, 2018, defendant BHASKAR SAVANI sent a WhatsApp message to Person #12, known to the grand jury, regarding implants stating that the new thread design was a great success.

178.    On or about August 15, 2018, defendant BHASKAR SAVANI sent an iMessage to Person #13, known to the grand jury, discussing expanding Person #13's duties to include work with Osseolink USA LLC, stating that defendant BHASKAR SAVANI needed to hire FDA consultants.

179.    On or about August 16, 2018, defendant BHASKAR SAVANI sent an iMessage to Person #10 inquiring into the status of the FDA registration.

180.    On or about September 17, 2018, defendant BHASKAR SAVANI sent an email to Person #13, copying defendants NIRANJAN SAVANI and ALEKSANDRA RODOMIAK, and Person #1, communicating the compensation structure for Person #13 which was dependent on FDA approval of the Osseolink "Engage" implant.

181.    On or about September 18, 2018, Person #11 went to The Dental Retreat's supply closet to retrieve an Osseolink "Engage" prototype/sample dental implant for an upcoming patient procedure and observed that the packaging was labeled "NOT FOR HUMAN USE." Concerned, Person #11 took the prototype/sample "Engage" dental implant to Person #8. Together, Person #11 and Person #8 took the prototype/sample "Engage" dental implant to defendant JON JULIAN. Defendant JULIAN claimed not to have realized that the prototype/sample "Engage" dental implant was labeled "NOT FOR HUMAN USE." Defendant JULIAN then purportedly called defendant BHASKAR SAVANI on his cellular phone in front of Person #11 and Person #8. Although they were standing in the same room as defendant JULIAN when he made the call, Person #11 and Person #8 could not hear what was being said. Upon

hanging up the phone, defendant JULIAN went forward with that day's procedure and continued to place the unapproved Osseolink "Engage" implant into patients up and until on or about October 17, 2018.

182.    On or about October 18, 2018, the government executed court-authorized search warrants at the SAVANI GROUP headquarters, among other locations. After that date and the searches, defendant JON JULIAN did not place another prototype/sample "Engage" dental implant into a patient. Defendant JULIAN's last procedure involving the prototype/sample "Engage" dental implant was on or about October 17, 2018.

183.    In total, defendant JON JULIAN placed at least 25 "NOT FOR HUMAN USE" prototype/sample Osseolink "Engage" dental implants in approximately 16 human patients, and defendant NIRANJAN SAVANI placed at least three "NOT FOR HUMAN USE" implants in approximately two human patients.

## OVERT ACTS

In furtherance of the conspiracy and to affect its object, the defendants and other co-conspirators, known and unknown to the grand jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

On or about the dates below, defendants BHAKSAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, knowingly made under oath, and under penalty of perjury, and subscribed as true, false statements with respect to material facts in the Petitions for Nonimmigrant Worker to the United States Department of Homeland Security, Form I-129, and in the Labor Condition Applications for Nonimmigrant Workers, Form ETA-9035, to the United States Department of Labor, to secure H-1B visas for the H-1B workers identified below, known to the grand jury, each a separate overt act in this indictment:

| Overt Act | Date | Defendant | H-1B Worker |
|-----------|------|-----------|-------------|
| 1 | February 4, 2009 | ARUN SAVANI | Person #14 |
| 2 | July 12, 2010 | ARUN SAVANI | Person #14 |
| 3 | October 20, 2010 | ARUN SAVANI | Person #15 |
| 4 | March 31, 2011 | ARUN SAVANI | Person #16 |
| 5 | April 12, 2011 | ARUN SAVANI | Person #17 |
| 6 | June 7, 2011 | ARUN SAVANI | PIYUSHA PATEL |
| 7 | September 8, 2011 | ARUN SAVANI | HITESHKUMAR GOYANI |
| 8 | November 11, 2011 | ARUN SAVANI | Person #19 |
| 9 | April 18, 2012 | ARUN SAVANI | Person #20 |
| 10 | June 22, 2012 | ARUN SAVANI | Person #21 |
| 11 | June 22, 2012 | ARUN SAVANI | BHARATKUMAR PARASANA |
| 12 | July 19, 2012 | ARUN SAVANI | Person #25 |
| 13 | August 8, 2012 | ARUN SAVANI | Person #22 |
| 14 | January 9, 2013 | ARUN SAVANI | Person #17 |
| 15 | January 19, 2013 | ARUN SAVANI | BHARATKUMAR PARASANA |
| 16 | March 28, 2013 | ARUN SAVANI | VIVEK SAVANI |
| 17 | May 21, 2013 | ARUN SAVANI | Person #23 |
| 18 | September 5, 2013 | ARUN SAVANI | Person #25 |
| 19 | June 27, 2014 | ARUN SAVANI | HITESHKUMAR GOYANI |
| 20 | September 12, 2014 | ARUN SAVANI | Person #19 |
| 21 | September 18, 2014 | ARUN SAVANI | PIYUSHA PATEL |
| 22 | March 9, 2015 | ARUN SAVANI | Person #24 |
| 23 | June 11, 2015 | ARUN SAVANI | BHARATKUMAR PARASANA |
| 24 | August 5, 2015 | ARUN SAVANI | Person #22 |
| 25 | May 2, 2016 | BHASKAR SAVANI | Person #23 |
| 26 | May 2, 2016 | ARUN SAVANI | VIVEK SAVANI |
| 27 | May 2, 2016 | NIRANJAN SAVANI | PIYUSHA PATEL |
| 28 | June 15, 2018 | ARUN SAVANI | Person #25 |
| 29 | June 15, 2018 | ARUN SAVANI | Person #24 |
| 30 | August 14, 2018 | NIRANJAN SAVANI | PIYUSHA PATEL |
| 31 | August 16, 2018 | ARUN SAVANI | Person #22 |
| 32 | April 5, 2019 | ARUN SAVANI | Person #24 |
| 33 | April 8, 2019 | BHASKAR SAVANI | Person #25 |
| 34 | July 31, 2019 | ARUN SAVANI | VIVEK SAVANI |
| 35 | September 10, 2020 | NIRANJAN SAVANI | Person #25 |

On or about the dates below, defendants BHASKAR SAVANI, ARUN SAVANI,

NIRANJAN SAVANI, SUNIL PHILIP, and AMEN DHYLLON, with others known to the

grand jury, committed the following in furtherance of the health care wire fraud scheme, each a separate overt act in this indictment:

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 36 | January 2013 | BHASKAR SAVANI ARUN SAVANI | At the direction of defendants BHASKAR SAVANI and ARUN SAVANI, the Smilekrafters Dental LLC entities were incorporated. |
| 37 | February 12, 2013 | BHASKAR SAVANI | At the direction of defendant BHASKAR SAVANI, the Smilekrafters Dental LLC entities entered into a fraudulent Practice Purchase Agreement with Smile Krafters PC |
| 38 | March 8, 2013 | BHASKAR SAVANI ARUN SAVANI | At the direction of defendants BHASKAR SAVANI and ARUN SAVANI, Conestoga Bank account 1223 was opened for Smilekrafters Dental LLC |
| 39 | March 25, 2013 | AMEN DHYLLON | Incorporated Faces & Braces, Inc. |
| 40 | April 2013 | AMEN DHYLLON | Secured a Medicaid contract with MCO #2 by failing to disclose to MCO #2 defendant BHASKAR SAVANI and the SAVANI GROUP's interest in and control of the dental practices credentialed under the contract. |
| 41 | April 15, 2013 | AMEN DHYLLON ARUN SAVANI | Entered into a Mutual Understanding that a property sub-lease would be executed and used solely to falsely demonstrate defendant DHYLLON's independence from the SAVANI GROUP to gain insurance contracts. The sub-lease would become null and void once insurance contracts were obtained. |

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 42 | May 1, 2013 | AMEN DHYLLON ARUN SAVANI | Opened Conestoga Bank account ending in 3146 for Faces & Braces, Inc. |
| 43 | January 22, 2014 | NIRANJAN SAVANI | Caused the submission of fraudulent claims for services to Patient #25 that he did not provide. |
| 44 | November 20, 2014 | SUNIL PHILLIP | Filed incorporation documents for Advantage Dental, PC. |
| 45 | March 24, 2015 | BHASKAR SAVANI ARUN SAVANI | At the direction of defendants BHASKAR SAVANI and ARUN SAVANI Conestoga Bank account ending in 4202 was opened for Advantage Dental, P.C. |
| 46 | July 13, 2016 | ALEKSANDRA RADOMIAK | Email to Person #3, among others, and copying defendants BHASKAR SAVANI, ARUN SAVANI, and ALEKSANDRA RADOMIAK, directing that "Per Ola" uncredentialed dentists should be made "ACTIVE" in Dentaweb to treat patients. |
| 47 | March 6, 2017 | NIRANJAN SAVANI | Caused the submission of fraudulent claims for services to Patient #26 that he did not provide. |
| 48 | April 9, 2018 | NIRANJAN SAVANI | Caused the submission of fraudulent claims for services to Patient #11 that he did not provide. |

On or about the dates below, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be regularly moved from the Smilekrafters Dental LLC account ending in 4905 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Thereafter, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from United Dentistry account ending in 4947 at TD Bank into ADM PC account ending in 6481 at TD Bank and then

into various other SAVANI GROUP-controlled accounts. Each transaction was designed to conceal the nature and origin of the funds, each a separate overt act in this indictment:

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 49 | February 9, 2018 | BHASKAR SAVANI ARUN SAVANI | Transfer of approximately $137,000 from Smilekrafters Dental LLC account ending in 4905 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Approximately $60,000 of the transfer constituted proceeds of health care fraud. |
| 50 | February 9, 2018 | BHASKAR SAVANI ARUN SAVANI | Transfer of approximately $137,000 from United Dentistry account ending in 4947 at TD Bank to ADM PC account ending in 6481 at TD Bank. Approximately $60,000 of the transfer constituted proceeds of health care fraud. |

On or about the date below, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from the Advantage Dental account ending in 4880 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Thereafter, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from United Dentistry account ending in 4947 at TD Bank to ADM PC account ending in 6481 at TD Bank to various SAVANI GROUP-controlled accounts. The transaction was designed to conceal the nature and origin of the funds.

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 51 | February 16, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $86,000 from Advantage Dental account ending in 4880 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Approximately $86,000 of the transfer constituted proceeds of health care fraud. |

On or about the dates below, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from F&B account ending in 4939 at TD Bank and into ADM PC account ending in 6481 at TD Bank. After the proceeds of the health care wire fraud scheme were deposited into ADM PC account ending in 6481 at TD Bank, defendants BHASKAR SAVANI and ARUN SAVANI caused the proceeds to be comingled and transferred into ADMG LLC account ending in 6499 at TD Bank and then into various other SAVANI GROUP-controlled accounts. Each transaction was designed to conceal the nature and origin of the funds, each a separate overt act in this indictment:

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 52 | March 23, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $122,000 from F&B account ending in 4939 at TD Bank to ADM PC account ending in 6481 at TD Bank. Approximately $84,000 of the transfer constituted proceeds of health care fraud. |
| 53 | March 23, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $500,000 from ADM PC account ending in 6481 at TD Bank to ADMG LLC account ending in 6499 at TD Bank. Approximately $84,000 of the transfer constituted proceeds of health care fraud. |

On or about the dates below, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from both Smilekrafters Dental LLC account ending in 4905 at TD Bank and Advantage Dental account ending in 4880 at TD Bank and into United Dentistry account ending in 4947 at TD Bank. Thereafter, defendants BHASKAR SAVANI and ARUN SAVANI caused proceeds of the health care wire fraud scheme to be transferred from United Dentistry account ending in 4947 at TD Bank into American Dental Management PC account ending in 6481 at TD Bank, and then into various other SAVANI GROUP-controlled accounts. Each transaction was designed to conceal the nature and origin of the funds, each a separate overt act in this indictment:

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 54 | May 11, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $92,000 from Advantage Dental account ending in 4880 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Approximately $92,000 of the transfer constituted proceeds of health care fraud. |
| 55 | May 11, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $124,000 from Smilekrafters Dental LLC account ending in 4905 at TD Bank to United Dentistry account ending in 4947 at TD Bank. Approximately $97,000 of the transfer constituted proceeds of health care fraud. |
| 56 | May 11, 2018 | BHASKAR SAVANI ARUN SAVANI | The transfer of approximately $216,000 from United Dentistry account ending in 4947 at TD Bank to ADM PC account ending in 6481 at TD Bank. Approximately $190,000 of the transfer constituted proceeds of health care fraud. |

On or about the dates below, defendants BHASKAR SAVANI and ARUN SAVANI caused monetary transactions in criminally-derived property, that is, health care fraud proceeds, of a value greater than $10,000, to be transferred from the bank accounts of nominee-owned dental practices to accounts owned by the SAVANI GROUP, each a separate overt act in this indictment:

| Overt Act | Date | Defendant(s) | Description |
|---|---|---|---|
| 57 | October 2, 2013 | BHASKAR SAVANI ARUN SAVANI | Withdrawal from Smilekrafters Dental LLC account ending 1223 in the amount of $83,365.50 and deposit of same into Smile Krafters PC account ending 1425. |
| 58 | July 18, 2014 | BHASKAR SAVANI ARUN SAVANI | Withdrawal from Smilekrafters Dental LLC account ending 1223 in the amount of $95,363 and deposit of same into Smile Krafters PC account ending 1425. |
| 59 | April 10, 2015 | BHASKAR SAVANI ARUN SAVANI | Internal bank transfer in the amount of $119,283.60 from Smilekrafters Dental LLC account ending 1223 into Smile Krafters PC account ending 1425. |
| 60 | March 30, 2018 | BHASKAR SAVANI ARUN SAVANI | Internal bank transfer in the amount of $39,452.74 from Advantage Dental PC account ending 4880 into United Dentistry PC account ending 4947. |
| 61 | April 27, 2018 | BHASKAR SAVANI ARUN SAVANI | Internal bank transfer in the amount of $143,562.58 from Faces & Braces Inc. account ending 4939 into American Dental Management PC account ending 6481. |

On or about the dates below, defendant SUNIL PHILIP caused Internal Revenue Service forms 1040 for defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and their spouses, prepared by defendant SUNIL PHILIP, to be electronically filed

with the Internal Revenue Service, which defendants SUNIL PHILIP, BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI knew were false and fraudulent, each a separate overt act in this indictment:

| Overt Act | Date | Defendant | Description |
|---|---|---|---|
| 62 | March 10, 2016 | ARUN SAVANI NIRANJAN SAVANI SUNIL PHILIP | Fraudulent form 1040 for defendants ARUN SAVANI and NIRANJAN SAVANI, and their spouses electronically filed with the Internal Revenue Service. |
| 63 | April 10, 2016 | BHASKAR SAVANI SUNIL PHILIP | Fraudulent form 1040 for defendant BHASKAR SAVANI and his spouse electronically filed with the Internal Revenue Service. |
| 64 | March 30, 2017 | BHASKAR SAVANI ARUN SAVANI NIRANJAN SAVANI SUNIL PHILIP | Fraudulent forms 1040 for defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and their spouses electronically filed with the Internal Revenue Service. |
| 65 | April 4, 2018 | BHASKAR SAVANI ARUN SAVANI | Fraudulent forms 1040 for defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, and their spouses electronically filed with the Internal Revenue Service. |

On or about the dates below, defendants BHASKAR SAVANI and NIRANJAN SAVANI committed the following acts in furtherance of the scheme to circumvent FDA regulatory requirements and to defraud patients by profiting from placing unapproved dental

devices in patients without their knowledge and informed consent, each a separate overt act in

this indictment:

| Overt Act | Date | Defendant | Description |
|-----------|------|-----------|-------------|
| 66 | May 2017 | BHASKAR SAVANI | Caused prototypes for the new Osseolink "Engage" implant to be machined. |
| 67 | April 2018 | BHASKAR SAVANI | Caused machined prototypes of the new Osseolink "Engage" implant to be sterilized and packaged, for delivery to be expedited, and to be described as "NOT for clinical sale" and "NOT for patient use." |
| 68 | April 24, 2018 | BHASKAR SAVANI | Caused the approval of a proposed label that included the warning "NOT FOR HUMAN USE." |
| 69 | May 16, 2018 | NIRANJAN SAVANI | Placed a prototype/sample "Engage" implant labeled "NOT FOR HUMAN USE" in Patient #2. |
| 70 | June 4, 2018 | BHASKAR SAVANI | Caused the prototype/sample "Engage" implant to move in interstate commerce via Federal Express mailing from Pennsylvania to South Carolina (FedEx Invoice Number: 6-210-03666; Account Number: 3165-7182-4; Tracking Number: 772387398977). |
| 71 | June 8, 2018 | NIRANJAN SAVANI | Placed a prototype/sample "Engage" implant labeled "NOT FOR HUMAN USE" in Patient #3. |
| 72 | June 8, 2018 | BHASKAR SAVANI | Caused the prototype/sample "Engage" implant to move in interstate commerce via Federal Express mailing from Pennsylvania to South Carolina (FedEx Invoice Number: 6-217-04523; Account Number: 3165-7182-4; Tracking Number: 772427774990). |

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

### CONSPIRACY TO COMMIT VISA FRAUD
### 18 U.S.C. § 371

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.　　Paragraphs 1, 3, 5 through 7, and 18 through 24 of Count One are incorporated here.

2.　　From in or about February 2009 through in or about October 2020, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**NIRANJAN SAVANI,**
**a/k/a "Nin,"**
**VIVEK SAVANI,**
**BHARATKUMAR PARASANA,**
**a/k/a "Kumar,"**
**HITESHKUMAR GOYANI, and**
**PIYUSHA PATEL**

conspired and agreed, together and with others known and unknown to the grand jury, to commit an offense against the United States, that is, knowingly made under oath, and under penalty of perjury, and subscribed as true, false statements with respect to material facts in the Petitions for Nonimmigrant Worker to the United States Department of Homeland Security, Form I-129, and Labor Condition Applications for Nonimmigrant Workers to the United States Department of Labor, Form ETA-9035, including the supporting documents, for the workers listed in Overt Acts 1 through 35 of Count One, which are incorporated here, which application and petition was required by the immigration laws and regulations prescribed thereunder, and presented the

67

applications and petitions which contained false statements, in violation of Title 18, United States Code, Section 1546(a).

## MANNER AND MEANS

It was part of the conspiracy that:

3.    Paragraphs 26 through 37 of Count One are incorporated here.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI, VIVEK SAVANI, BHARATKUMAR PARASANA, HITESHKUMAR GOYANI, and PIYUSHA PATEL committed the following Overt Acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.    Overt Acts 1 through 35 of Count One are incorporated here.

All in violation of Title 18, United States Code, Section 371.

## COUNTS THREE THROUGH SEVEN

### VISA FRAUD
### 18 U.S.C. § 1546(a)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.     Paragraphs 18 through 37 of Count One are incorporated here.

2.     On or about the dates listed below, each date constituting a separate count, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**NIRANJAN SAVANI,**
**a/k/a "Nin," and**
**PIYUSHA PATEL,**

knowingly made under oath, and under penalty of perjury, and subscribed as true, any false statement with respect to a material fact that was in the Petitions for Nonimmigrant Worker to the United States Department of Homeland Security, Form I-129, and Labor Condition Applications for Nonimmigrant Workers to the United States Department of Labor, Form ETA-9035, including the supporting documents, for the workers listed below, which applications and petitions were required by labor and immigration laws, and regulations prescribed thereunder, and presented the applications and petitions which contained false statements, each a separate count in this indictment.

69

| Count | Date | Worker | Defendant(s) | False Statements |
|---|---|---|---|---|
| 3 | June 15, 2018 | Person #25 | **ARUN SAVANI** | The application and petition falsely stated that Person #25 would be working as a chemist at American Management Group LLC at 401 Commerce Drive, Apt 108, Fort Washington, Pennsylvania. |
| 4 | April 8, 2019 | Person #25 | **BHASKAR SAVANI, a/k/a "Dr. B"** | The application and petition falsely stated that Person #25 would be working as a chemist at American Dental Management PC, 1240 Main Ave, Clifton, New Jersey. |
| 5 | August 14, 2018 | PIYUSHA PATEL | **NIRANJAN SAVANI, a/k/a "Nin" PIYUSHA PATEL** | The application and petition falsely stated that PIYUSHA PATEL would be working as an accountant at A-1 Iowa Dental PLLC, 6901 Hickman Road, Urbandale, IA. |
| 6 | August 16, 2018 | Person #22 | **ARUN SAVANI** | The application and petition falsely stated that Person #22 would be working as a software developer at American Management Group LLC, 401 Commerce Drive, Suite 108, Fort Washington, Pennsylvania. |
| 7 | September 10, 2020 | Person #25 | **NIRANJAN SAVANI, a/k/a "Nin"** | The application falsely stated that Person #25 would be working as a quality control chemist at American Unity Dental PA, 485 US Route 1 & Plainfield Avenue, Edison, New Jersey. |

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT EIGHT

### CONSPIRACY TO OBSTRUCT JUSTICE
### 18 U.S.C. § 371

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 38 through 43 of Count One are incorporated here.

2.      From in or about November 2018 through in or about August 2022, in the Eastern District of Pennsylvania and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI, and**
**SUSAN MALPARTIDA**

conspired and agreed, together with others known and unknown to the grand jury, to corruptly influence, obstruct, and impede and endeavor to influence, obstruct and impede a pending proceeding, that is the federal grand jury investigation in the Eastern District of Pennsylvania of the SAVANI GROUP, in violation of Title 18, United States Code, Section 1503.

### MANNER AND MEANS

It was part of the conspiracy that:

3.      Paragraphs 38 and 39 Count One are incorporated here.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants BHASKAR SAVANI, ARUN SAVANI, and SUSAN MALPARTIDA committed the following Overt Acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.      Paragraphs 40, 41, and 43 of Count One are incorporated here.

All in violation of Title 18, United States Code, Section 371.

71

## COUNT NINE

### CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### 18 U.S.C. §§ 1349 and 1347

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.     Paragraphs 5 through 7, 9, 10 through 13, and 44 through 85 of Count One are incorporated here.

2.     From in or about October 2012, through in or about November 30, 2021, in the Eastern District of Pennsylvania and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**NIRANJAN SAVANI,**
**a/k/a "Nin,"**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen," and**
**ALEKSANDRA RADOMIAK,**
**a/k/a "Ola,"**

conspired and agreed, together and with Person #1, Person #2, and Person #3, and others known and unknown to the grand jury to knowingly and willfully execute a scheme to defraud a health care benefit program, specifically Medicaid, and to obtain money and property of Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by submitting and causing to be submitted fraudulent health care insurance claims that were billed under Medicaid contracts obtained by false or fraudulent pretenses, representations and promises and/or under the National Provider Identification number of a dentist who was out of the United States at the time the services were allegedly performed.

All in violation of Title 18, United States Code, Sections 1349 and 1347.

## COUNTS TEN THROUGH TWENTY-FOUR

### HEALTH CARE FRAUD
### 18 U.S.C. § 1347

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.     Paragraphs 5 through 7, 9 and 10, and 44 through 85 of Count One are incorporated here.

2.     On or about each of the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, the defendant(s) identified below, knowingly and willfully executed, and aided and abetted, a scheme and artifice to defraud health care benefit programs in connection with the delivery of and payment for health care benefits, items and services, by means of false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of health care benefit programs, that included Medicaid, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), by submitting and causing the submission of claims for dental services under fraudulently obtained Medicaid contracts, and by falsely asserting that credentialed dentists had rendered service as required for payment, each a separate count in this indictment

| Count | Date Claim Received by MCO | Patient | Approx. Amount Billed | Service Address on Claim | Defendant(s) |
|-------|----------------------------|---------|-----------------------|--------------------------|--------------|
| 10 | February 2, 2018 | Patient #7 | $1,200 | 1247 Cedar Crest Blvd., Ste. 300, Allentown, PA | **BHASKAR SAVANI, a/k/a "Dr. B," ARUN SAVANI ALEKSANDRA RADOMIAK, a/k/a "Ola"** |

| Count | Date Claim Received by MCO | Patient | Approx. Amount Billed | Service Address on Claim | Defendant(s) |
|---|---|---|---|---|---|
| 11 | March 22, 2018 | Patient #8 | $6,500 | 6100 N. 5th St., Philadelphia, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 12 | July 27, 2018 | Patient #9 | $400 | 1815 Schadt Ave., Whitehall, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI ALEKSANDRA RADOMIAK, a/k/a "Ola"** |
| 13 | April 2, 2018 | Patient #10 | $1,200 | 8 Ponds Edge Dr., Ste. 2, Chadds Ford, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI** |
| 14 | April 9, 2018 | Patient #11 | $350 | 1500 Horizon Drive, Ste. 104, Chalfont, PA | **NIRANJAN SAVANI, a/k/a "Nin"** |
| 15 | April 13, 2018 | Patient #12 | $150 | 1500 Horizon Drive, Ste. 104, Chalfont, PA | **NIRANJAN SAVANI, a/k/a "Nin"** |
| 16 | April 23, 2018 | Patient #13 | $1,300 | 356 Woodland Ave., Morton, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI** |
| 17 | November 14, 2018 | Patient #14 | $1,150 | 60 W. Walnut St., Ste. 101, Lancaster, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 18 | January 10, 2019 | Patient #15 | $500 | 301 E. City Ave, Ste. 255, Bala Cynwyd, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |

| Count | Date Claim Received by MCO | Patient | Approx. Amount Billed | Service Address on Claim | Defendant(s) |
|---|---|---|---|---|---|
| 19 | February 4, 2019 | Patient #16 | $350 | 1000 S. Easton Road, Ste. 315, Wyncote, PA | **NIRANJAN SAVANI, a/k/a "Nin"** |
| 20 | August 13, 2019 | Patient #17 | $6,500 | 301 E. City Ave, Ste. 255, Bala Cynwyd, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 21 | May 21, 2020 | Patient #18 | $6,500 | 301 E. City Ave, Ste. 255, Bala Cynwyd, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 22 | November 11, 2020 | Patient #19 | $500 | 456 School Lane, Ste. 104, Harleysville, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 23 | May 31, 2021 | Patient #20 | $2,900 | 2230 N. 5th Street Hwy., Ste. 104, Reading, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |
| 24 | November 18, 2021 | Patient #21 | $2,900 | 60 W. Walnut St., Ste.101, Lancaster, PA | **BHASKAR SAVANI, a/k/a "Dr. B" ARUN SAVANI AMEN DHYLLON, a/k/a "Dr. Amen"** |

All in violation of Title 18, United States Code, Section 1347 and 2.

## COUNT TWENTY-FIVE

### MONEY LAUNDERING CONSPIRACY
### 18 U.S.C. § 1956(h)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 3 through 6, 8, 9 and 86-101 of Count One are incorporated here.

2.      From on or about January 1, 2013 through at least on or about May 31, 2018, the exact dates being unknown to the grand jury, in the Eastern District of Pennsylvania and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**SUNIL PHILIP,**
**a/k/a "A. Philipose," and**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen"**

knowingly and intentionally conspired and agreed, together with others, known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, that is:

a.      to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the

77

proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

       b.     to knowingly engage and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1957.

### MANNER AND MEANS

       3.     Paragraph 17(d) of Count One is incorporated here.

       All in violation of 18 U.S.C. § 1956(h).

## COUNTS TWENTY-SIX THROUGH THIRTY-FOUR

### LAUNDERING OF MONETARY INSTRUMENTS
### and AIDING AND ABETTING
### 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1. Paragraphs 3 through 6, 86, and 88 through 101 of Count One are incorporated here.

2. On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B," and**
**ARUN SAVANI**

knowingly conducted and attempted to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions, the defendants knew that the property involved in the financial transactions, represented the proceeds of some form of unlawful activity, each constituting a separate count in this indictment:

| Count | Date | Transaction | Amount |
|-------|------|-------------|--------|
| 26 | February 9, 2018 | Transfer from Smilekrafters Dental LLC account ending in 4905 into United Dentistry PC account ending in 4947 | $137,534.53 |
| 27 | February 9, 2018 | Transfer from United Dentistry PC account ending in 4947 into American Dental Management PC account ending in 6481 | $137,534.53 |

79

| Count | Date | Transaction | Amount |
|-------|------|-------------|--------|
| 28 | February 16, 2018 | Transfer from Advantage Dental PC account ending in 4880 into United Dentistry PC account ending in 4947 | $86,000.00 |
| 29 | February 16, 2018 | Transfer from United Dentistry PC account ending in 4947 into American Dental Management PC account ending in 6481 | $86,000.00 |
| 30 | March 23, 2018 | Transfer from Faces & Braces Inc. account ending in 4939 into American Dental Management PC account ending in 6481 | $122,454.75 |
| 31 | March 23, 2018 | Transfer from American Dental Management PC account ending in 6481 into American Dental Management Group LLC account ending in 6499 | $500,000.00 |
| 32 | May 11, 2018 | Transfer from Smilekrafters Dental LLC account ending in 4905 into United Dentistry PC account ending in 4947 | $124,049.35 |
| 33 | May 11, 2018 | Transfer from Advantage Dental PC account ending in 4880 into United Dentistry PC account ending in 4947 | $92,705.90 |
| 34 | May 11, 2018 | Transfer from United Dentistry PC account ending in 4947 into American Dental Management PC account ending in 6481 | $216,755.25 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), and 2.

## COUNTS THIRTY-FIVE THROUGH THIRTY-SEVEN

### MONETARY TRANSACTIONS WITH PROCEEDS
### OF SPECIFIED UNLAWFUL ACTIVITY and
### AIDING AND ABETTING
### 18 U.S.C. §§ 1957 and 2

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.     Paragraphs 3 through 6, and 87 of Count One are incorporated here.

2.     On or about the dates set forth below, in the Eastern District of

Pennsylvania, and elsewhere, defendants

### BHASKAR SAVANI,
### a/k/a "Dr. B," and
### ARUN SAVANI

knowingly engaged and attempted to engage in the following monetary transactions by, through,

or to a financial institution, affecting interstate and foreign commerce, in criminally derived

property of a value greater than $10,000, that is the transfer of U.S. currency, such property

having been derived from a specified unlawful activity, that is, health care fraud, in violation of

Title 18, United States Code, Sections 1347 and 1349, each a separate count in this indictment:

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| 35 | February 23, 2018 | Transfer of $149,303.62 from Smilekrafters Dental LLC account ending in 4905 to United Dentistry PC account ending in 4947 |
| 36 | March 30, 2018 | Transfer of $39,452.74 from Advantage Dental PC account ending in 4880 to United Dentistry PC account ending in 4947 |
| 37 | April 27, 2018 | Transfer of $143,562.58 from Faces & Braces Inc account ending in 4939 to American Dental Management PC account ending in 6481 |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## COUNT THIRTY-EIGHT

**CONSPIRACY TO DEFRAUD THE UNITED STATES TREASURY**
**18 U.S.C. § 371**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      From on or about January 1, 2013, through on or about April 15, 2018, in the Eastern District of Pennsylvania, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI,**
**NIRANJAN SAVANI,**
**a/k/a "Nin," and**
**SUNIL PHILIP,**
**a/k/a "A. Philipose,"**

conspired and agreed, together and with others, both known and unknown to the grand jury, to defraud the United States, by knowingly impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue: namely, personal income taxes and payroll taxes.

Parties, Persons, and Entities

2.      Paragraphs 3 through 8, 11 and 12 of Count One are incorporated herein.

**MANNER AND MEANS**

It was part of the conspiracy that:

3.      Paragraphs 102 through 114 of Count One are incorporated herein.

4.      As part of their scheme, defendants BHASKAR SAVANI, ARUN SAVANI and NIRANJAN SAVANI used an unreported cash payroll for some employees, and paid portions of other employees' salaries through cash, fake expense reimbursements, and other

unreported forms of income.

5.     At the direction of defendant ARUN SAVANI, maintenance and construction workers for the SAVANI GROUP were paid in cash, and Person #1 and Person #2 were paid a portion of their salaries in cash. The cash for maintenance and construction workers was provided to defendant BHARATKUMAR PARASANA, charged elsewhere in this indictment, on a weekly basis to pay the maintenance and construction workers. SAVANI GROUP employees working with Person #1 were directed by defendant ARUN SAVANI, through Person #1, to classify the cash payroll payments as a "construction expense" in internal accounting records.

6.     The cash used to pay the cash payroll to the maintenance and construction workers was skimmed from the cash "daily receipts" collected from SAVANI GROUP dental practices on a weekly basis. The unreported cash "daily receipts" were kept in a file cabinet in the office of Person #1 at the SAVANI GROUP's Fort Washington corporate headquarters. This unreported cash was dispensed, at the direction of defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI, not only for the maintenance and construction worker cash payroll, but also to pay portions of other employee salaries in cash, and whenever needed as spending money for defendants BHASKAR SAVANI, ARUN SAVANI, NIRANJAN SAVANI and their wives and children.

7.     Person #1 and Person #2, among other employees and associates of the Enterprise (as described in Count One), were paid a portion of their salaries as payments made by checks written directly to schools or daycare centers for their children. These payments were then expensed through SAVANI GROUP companies including, but not limited to, AAA Dentalab LLC, ADMG LLC, and ADM PC.

8.      Other unreported salary payments were made to Person #1 and Person #2, among other employees and associates of the Enterprise, through fictitious reimbursements for office supplies and other office expenses. Upon the advice of defendant SUNIL PHILIP, some employees and associates of the Enterprise had relatives create corporate entities to receive the fictitious reimbursement checks to reduce the risk of the fictitious payments being exposed for what they were (unreported income) if the employees or company were ever audited by the Internal Revenue Service.

9.      Defendants BHASKAR SAVANI and ARUN SAVANI met annually with the employees and associates of the Enterprise who had the off-books salary arrangement to determine what portion of their salary would be paid off-books in the coming year and to explain how the salary payments would be disguised and paid. As a result of this scheme, the SAVANI GROUP failed to report approximately $1.7 million in wages, causing a payroll tax loss of approximately $500,000.

**OVERT ACTS**

1.      Overt Acts 62 through 65 of Count One are incorporated herein.

2.      On or about January 19, 2018, defendants BHASKAR SAVANI, ARUN SAVANI, and NIRANJAN SAVANI caused an Internal Revenue Service Form 941 Employer's Quarterly Tax Return for ADMG LLC to be electronically submitted to the Internal Revenue Service.

All in violation of Title 18, United States Code, Section 371.

## COUNTS THIRTY-NINE THROUGH FORTY-ONE

**WIRE FRAUD and
AIDING AND ABETTING
18 U.S.C. §§ 1343 and 2**

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 3 through 8 of Count One are incorporated herein.

2.      From on or about January 1, 2017 to on or about April 15, 2018,

defendants

**BHASKAR SAVANI,
a/k/a "Dr. B,"
ARUN SAVANI,
NIRANJAN SAVANI,
a/k/a "Nin," and
SUNIL PHILIP,
a/k/a "A. Philipose,"**

devised and intended to devise a scheme to defraud the United States and the Department of the

Treasury and to obtain money and property by means of false and fraudulent pretenses,

representations and promises.

**MANNER AND MEANS**

It was part of the scheme that:

3.      Paragraphs and 102 through 111, and 112(e) of Count One are

incorporated herein.

4.      On or about each of the dates set forth below, in the Eastern District of

Pennsylvania, the defendants described below, for the purpose of executing the scheme described

above, and attempting to do so, and aiding and abetting its execution, caused to be transmitted by

means of wire communication in interstate commerce the signals and sounds described below for

each count, each transmission constituting a separate count:

| Count | Date | Description | Defendants |
|-------|------|-------------|------------|
| 39 | April 4, 2018 | Electronic submission of defendant BHASKAR SAVANI's Form 1040 personal income tax return through a server in Martinsburg, West Virginia or Memphis, Tennessee. | **BHASKAR SAVANI, a/k/a "Dr. B" SUNIL PHILIP, a/k/a "A. Philipose"** |
| 40 | April 4, 2018 | Electronic submission of defendant ARUN SAVANI's Form 1040 personal income tax return through a server in Martinsburg, West Virginia or Memphis, Tennessee. | **ARUN SAVANI SUNIL PHILIP, a/k/a "A. Philipose"** |
| 41 | April 4, 2018 | Electronic submission of defendant NIRANJAN SAVANI's Form 1040 personal income tax return through a server in Martinsburg, West Virginia or Memphis, Tennessee. | **NIRANJAN SAVANI, a/k/a "Nin" SUNIL PHILIP, a/k/a "A. Philipose"** |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FORTY-TWO

### CONSPIRACY TO DISTRIBUTE AN ADULTERATED AND MISBRANDED MEDICAL DEVICE IN INTERSTATE COMMERCE
### 18 U.S.C. § 371

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

1.      Paragraphs 5, 7, and 115 through 129 of Count One are incorporated herein.

2.      Defendant JON JULIAN began working for the SAVANI GROUP in or about 2016. Defendant JULIAN was a partner in SAVANI GROUP dental practices in South Carolina, and a frequent lecturer at the SAVANI GROUP's dental education center, called The Dental Future Center.

3.      From in or about September 2016 through at least in or about January 2019, in the Eastern District of Pennsylvania and elsewhere, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**NIRANJAN SAVANI,**
**a/k/a "Nin," and**
**JON JULIAN**

conspired and agreed, together with others known and unknown to the grand jury, to commit offenses against the United States with the intent to defraud or mislead, by introducing into interstate commerce an adulterated and misbranded medical device, the prototype/sample "Engage" dental implant, for use in patients, when the prototype sample "Engage" implant had not received clearance by the United States Food and Drug Administration for that intended use, and when the label for the prototype/sample "Engage" dental implant bore a warning that the device was "NOT FOR HUMAN USE," in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

87

**MANNER AND MEANS**

It was part of the conspiracy that:

4.     Paragraphs 130 through 183 of Count One are incorporated herein.

**OVERT ACTS**

In furtherance of the conspiracy, defendants BHASKAR SAVANI, NIRANJAN SAVANI, and JON JULIAN, and others known and unknown to the grand jury, committed the following Overt Acts in the Eastern District of Pennsylvania and elsewhere:

1.     Overt Acts 66 through 72 of Count One are incorporated herein.

2.     On or about June 11, 2018, defendant JON JULIAN placed one Osseolink "Engage" prototype/sample dental implant labeled "NOT FOR HUMAN USE" into Patient #4; and three Osseolink "Engage" prototype/sample dental implants labeled "NOT FOR HUMAN USE" into Patient #5.

3.     On or about September 25, 2018, defendant JON JULIAN placed one Osseolink "Engage" prototype/sample dental implant labeled "NOT FOR HUMAN USE" into Patient #6.

4.     After defendant JON JULIAN had a conversation with Person #8 and Person #11 about how the prototype/sample "Engage" dental implant's box was labeled "NOT FOR HUMAN USE," defendant JULIAN continued to place the unapproved implant into patients, including on or about the dates below, each an overt act in this indictment:

| Overt Act | Date | Patient |
|-----------|------|---------|
| 5 | September 25, 2018 | Patient #6 |
| 6 | October 3, 2018 | Patient #22 |
| 7 | October 8, 2018 | Patient #23 |
| 8 | October 11, 2018 | Patient #24 |

| Overt Act | Date | Patient |
|---|---|---|
| 9 | October 17, 2018 | Patient #24 |

All in violation of Title 18, United States Code, Section 371.

## <u>NOTICE OF FORFEITURE NO. 1</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 1962, set forth in this indictment, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI**
**NIRANJAN SAVANI,**
**a/k/a "Nin," and**
**SUNIL PHILIP,**
**a/k/a "A. Philipose,"**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen," and**
**ALEKSANDRA RADOMAIK,**
**a/k/a "Ola"**

shall forfeit to the United States:

 (a) any interest acquired and maintained in violation of Title 18, United States Code, Section 1962;

 (b) any interest in, security of, claims against, or property or contractual rights of any kind which afford a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, including, but not limited to, the following:

  (i) 401 Commerce Dr., Ft. Washington, PA;

  (ii) 600 W. Olney Ave., Philadelphia, PA;

  (iii) 1901 Union Blvd., Allentown, PA;

  (iv) 1903 Union Blvd., Allentown, PA;

  (v) 744 Route 113, Souderton, PA;

90

(vi)    430 Babylon Rd., Horsham, PA;

(vii)    432 Babylon Rd., Horsham, PA;

(viii)    3554 Hulmeville Rd. Units G, J, M, Bensalem, PA;

(ix)    900 Wadsworth Ave., Philadelphia, PA;

(x)    5000 Hilltop Dr., Brookhaven, PA;

(xi)    402 Middletown Blvd., Unit B-1, Langhorne, PA;

(xii)    7234 Rising Sun Ave., Philadelphia, PA;

(xiii)    4730 SW 9th St., Des Moines, IA; and

(xiv)    1354 E. Ovid Ave., Des Moines, IA;  and

(c)    any property constituting or derived from proceeds obtained, directly and indirectly, from such racketeering activity, in violation of Title 18, United States Code, Section 1962, including, but not limited to the sum of $82,000,000.

2.    If any property described above, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been comingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture, including, but not limited to the following

      (i)      8539 Bustleton Ave., Philadelphia, PA;

      (ii)      5 Devonshires Ct., Blue Bell, PA;

      (iii)      1500 Horizon Dr., Unit B-1, Chalfont, PA;

      (iv)      115 Jonathan Drive, North Wales, PA;

      (v)      832 Paradise Dr., Ambler, PA;

      (vi)      288 Running Water Ct., Ambler, PA;

      (vii)      1293 Savani Circle, Horsham, PA;

      (viii)      1294 Savani Circle, Horsham, PA;

      (ix)      1295 Savani Circle, Horsham, PA;

      (x)      1296 Savani Circle, Horsham, PA;

      (xi)      87 Chestnut Lane, North Wales, PA;

      (xii)      456 School Lane, Harleysville, PA; and

      (xiii)      1330 Ala Moana Blvd., Unit 2008 Honolulu, HI.

All pursuant to Title 18, United States Code, Section 1963.

## <u>NOTICE OF FORFEITURE NO. 2</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       As a result of the violations of Title 18, United States Code, Sections 1546 and 371, charging conspiracy to violate Title 18, United States Code, Section 1546, set forth in this indictment, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI**
**NIRANJAN SAVANI,**
**a/k/a "Dr. Nin,"**
**VIVEK SAVANI**
**BHARATKUMAR PARASANA**
**a/k/a "Kumar,"**
**HITESHKUMAR GOYANI and**
**PIYUSHA PATEL**

shall forfeit to the United States:

(a)       any conveyance, including any vessel, vehicle, or aircraft used in the commission of such violations;

(b)       any property real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of such violations, including, but not limited to, the sum of $400,000; and

(c)       any property real or personal that is used to facilitate, or is intended to be used to facilitate, the commission of such violations.

2.       If any property described above, as a result of any act or omission of the defendants:

(a)       cannot be located upon the exercise of due diligence.

93

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been comingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(6).

## NOTICE OF FORFEITURE NO. 3

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Sections 1347 and 1349, set forth in this indictment, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI**
**NIRANJAN SAVANI,**
**a/k/a "Dr. Nin,"**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen," and**
**ALEKSANDRA RADOMIAK,**
**a/k/a "Ola"**

shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to such violations, including, but not limited to, the sum of $84,000,000.

2.     If any property described above, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been comingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

## <u>NOTICE OF FORFEITURE NO. 4</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1343, set forth in this indictment, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI**
**NIRANJAN SAVANI,**
**a/k/a "Dr. Nin,"**
**SUNIL PHILIP,**
**a/k/a "A. Philipose"**

shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to such violations, including, but not limited to, the sum of $927,422.

2. If any property described above, as a result of any act or omission of the defendants:

 (a) cannot be located upon the exercise of due diligence;

 (b) has been transferred or sold to, or deposited with, a third party;

 (c) has been placed beyond the jurisdiction of the Court;

 (d) has been substantially diminished in value; or

 (e) has been comingled with other property which cannot be divided

 without difficulty,

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

## <u>NOTICE OF FORFEITURE NO. 5</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1956 and 1957, set forth in this indictment, defendants

**BHASKAR SAVANI,**
**a/k/a "Dr. B,"**
**ARUN SAVANI**
**SUNIL PHILIP,**
**a/k/a "A. Philipose" and**
**AMEN DHYLLON,**
**a/k/a "Dr. Amen,"**

shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property, including, but not limited to, the sum of $148,975,000.

2.      If any property described above, as a result of any act or omission of the defendants:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the Court;

(d)      has been substantially diminished in value; or

(e)      has been comingled with other property which cannot be divided

without difficulty,

it is the intent of the United States, pursuant to Title 18 United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

99

property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1).

**A TRUE BILL:**

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

/s  Brent S. Wible

**BRENT S. WIBLE**
**CHIEF, MONEY LAUNDERING AND**
**ASSET RECOVERY SECTION**
**U.S. DEPARTMENT OF JUSTICE**

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

---

## THE UNITED STATES OF AMERICA

vs.

BHASKAR SAVANI
a/k/a "Dr. B,"
ARUN SAVANI
NIRANJAN SAVANI
a/k/a "Nin,"
SUNIL PHILIP
a/k/a "A. Philipose,"
AMEN DHYLLON
a/k/a "Dr. Amen,"
ALEKSANDRA RADOMIAK
a/k/a "Ola,"
JON JULIAN
VIVEK SAVANI
BHARATKUMAR PARASANA
a/k/a "Kumar,"
HITESHKUMAR GOYANI
PIYUSHA PATEL
SUSAN MALPARTIDA

---

INDICTMENT

18 U.S.C. § 1962(d) (RICO conspiracy – 1 count)
18 U.S.C. § 371 (visa fraud conspiracy - 1 count)
18 U.S.C. § 1546 (visa fraud – 5 counts)
18 U.S.C. § 371 - (obstruction of justice conspiracy – 1 count)

18 U.S.C. § 1349 (health care fraud conspiracy – 1 count)
18 U.S.C. § 1347 (health care fraud – 15 counts)
18 U.S.C. § 1956(h) (money laundering conspiracy – 1 count)
18 U.S.C. § 1956 (money laundering – 9 counts)
18 U.S.C. § 1957 (money laundering – 3 counts)
18 U.S.C. § 371 (conspiracy to defraud the United States Treasury – 1 count)
18 U.S.C. § 1343 (wire fraud – 3 counts)
18 U.S.C. § 371 (conspiracy to distribute adulterated and misbranded device – 1 count)
18 U.S.C. § 2 (aiding and abetting)

Filed in open court this ___18th___ day,
Of __JANUARY__ A.D. 20__23__

_____
Clerk

Bail, $ _____