IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 23-16 |
| BHASKAR SAVANI, *et al*, | : | |

MEMORANDUM OPINION

**Schmehl, J.**   /s/JLS                                                                                                                May 23, 2024

Before the Court are two motions to dismiss. Defendants Bhaskar, Arun and Niranjan Savani and Aleksandra Radomiak filed a joint motion to dismiss Counts 9 through 24 of the indictment and Defendant Vivek Savani filed a motion to dismiss the indictment against him in its entirety. The government has opposed both motions, and argument was held.

I.   **STATEMENT OF FACTS**

Pursuant to a 42-count indictment that was returned on January 18, 2023, a grand jury charged 12 different defendants with a variety of crimes, including obstruction of justice conspiracy in violation of 18 U.S.C. § 371, RICO conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to commit visa fraud and visa fraud in violation of 18 U.S.C. §§ 371 and 1546, conspiracy to commit health care fraud and health care fraud in violation of 18 U.S.C. §§ 1346 and 1347, conspiracy to commit money laundering and money laundering in violation of 18 U.S.C. §§ 1956 and 1957, tax fraud conspiracy and a tax wire fraud scheme in violation of 18 U.S.C. §§ 371 and 1343, and conspiracy to distribute an adulterated and misbranded dental device in interstate commerce in violation of 18 U.S.C. § 371.

Defendants Bhaskar, Arun and Niranjan Savani ("Savani brothers") and Aleksandra Radomiak ("Radomiak") filed a motion to dismiss attacking the counts of the indictment that address a health care scheme where Defendants allegedly lied to Pennsylvania Medicaid dental

1

program managed care organizations ("MCOs") regarding ownership of dental offices and the identity of Medicaid dental providers, in order to induce that program to pay defendants Medicaid money. These alleged actions resulted in charges against those defendants for conspiracy to commit health care fraud and health care fraud.

Defendant Vivek Savani ("Vivek") filed a motion to dismiss, seeking to dismiss the entire indictment against him. Vivek is charged with making a false statement of material fact in his Petition for Non Immigrant Worker to the United States Department of Homeland Security, Form I-129. This allegation against him resulted in one count of conspiracy to commit visa fraud.

## II.   STANDARD OF REVIEW

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense ... and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have." *United States v. Stansfield*, 171 F.3d 806, 812 (3d Cir. 1999) (quotations and citations omitted). An indictment is sufficient under Rule 7 if it: (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007), *quoting United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007). "In considering a defense motion to dismiss an indictment, the district court [must] accept[] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)) (alterations in original). A court must review the sufficiency of the indictment to ensure that "legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). A court may find that "a charging document fails to state an offense if the specific facts

alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).

### III.  DISCUSSION

For ease of discussion, I will address each motion to dismiss separately.

#### A.  Savani Brothers and Radomiak

Counsel for the Savani brothers and Radomiak argue that Counts 9 through 24 each charge an offense that: 1) fails to allege a health care fraud and wire fraud scheme, 2) misrepresents the applicable statutes related to the "Supervisory Billing" scheme by way of the Managed Care Organization ("MCO") contracting process contained within Title 28, Chapter 9 of the Pennsylvania Code, and 3) would result in a constructive amendment of the indictment if allowed to proceed to trial. ECF No. 228, p. 1. Specifically, these defendants argue that the allegations contained in the indictment "describe fraud sounding solely in state regulatory and contractual interests, both of which have been squarely rejected as the types of 'property' to which federal fraud statutes apply." *Id.*

In response, the Government argues that the indictment properly "alleges a scheme to defraud the Medicaid program of a tangible property interest, that is money. As alleged, the defendants devised a scheme to defraud a health care benefit program by lying to obtain money from Medicaid in the future." ECF No. 240, p. 4.

Section 1349 states that "[a]ny person who attempts or conspires to commit any offense under this chapter [including health care fraud pursuant to 18 U.S.C. § 1347,] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." To prove the offense of conspiracy to commit health care fraud, the government must show "(1) a conspiracy existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it." *United States v. Scarfo,* 41 F.4th 136, 198 (3d

Cir. 2022), quoting *United States v. Wheeler*, 16 F.4th 805, 819 (11th Cir. 2021) (citation omitted). Title 18, United States Code, Section 1347 (health care fraud) states in relevant part:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice –
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program [commits a crime].

As alleged in the indictment, in late 2012, Defendant Bhaskar Savani and the Savani Group dental companies were terminated from Medicaid contracts with certain MCOs. ECF No. 1, ¶ 67. In response, Defendants created entities with nominee owners, then used those entities and nominee owners to obtain Medicaid contracts that Bhaskar Savani and the Savani Group could not have obtained using their actual identities. *Id.* ¶¶ 68-74. The object of the scheme was to obtain future profits from claims billed under the fraudulently obtained Medicaid contracts. *Id.* ¶¶ 75-76, 84-85. Additionally, Defendants executed what they called a "supervisory billing" scheme whereby they billed for services under the name and NPI number of a credentialed dentist, when in fact, the service was provided by a different, uncredentialed dentist. *Id.*, ¶¶ 77-85.

Defendants argue that the health care wire fraud scheme as alleged in the indictment does not set forth a valid property interest and is therefore defective, relying on a line of mail and wire fraud cases where the courts limited the scope of mail and wire fraud statutes to protect only property rights. Defendants argue that their actions as set forth in the indictment were for the purpose of obtaining Medicaid contracts, which are a non-property interest, not for the purpose of obtaining money or property, and therefore, do not fall under the scope of the health care fraud statute. However, a review of relevant caselaw shows that this argument is incorrect, as the

4

object of Defendants' scheme was not the Medicaid contracts; rather, the point of the scheme was to obtain government money by entering into said contracts.

I find the case of *United States v. Kousisis* to be instructive in this matter. 82 F.4th 230 (3d Cir. Sept. 23, 2023). In *Kousisis*, the defendants had obtained contracts for projects which required the successful bidder to contract with a disadvantaged business enterprise ("DBE") to perform a percentage of the work on the contract. *Id.* at 234. The defendants falsely certified that they would be working with a particular DBE, and "submitted false documentation regarding [the DBE's] role in the [project]." *Id*. In reality, the DBE did not perform any work on the contract and was simply a pass-through company that permitted the defendants to appear to comply with their DBE commitments. *Id*. at 235. The defendants were convicted of wire fraud conspiracy and wire fraud. *Id*.

On appeal, defendants argued that the fraudulent representations related to the DBE were insufficient to establish the property interest necessary to sustain a wire fraud conviction. *Id*. at 235-236. They contended that because the contract was performed, and all the work required by the contract was completed, the government suffered no pecuniary loss, despite the failure to use a DBE. *Id*. at 236. According to defendants, any loss by PennDOT could not be classified as pecuniary because PennDOT received the repairs it paid for. *Id*. The *Kousisis* defendants argued that the requirement of having an actual DBE perform a portion of the work was merely an "intangible interest" and not a protected property interest. *Id*.

The Third Circuit rejected the defendants' arguments, holding that "obtaining the government's money or property was precisely the object of the [defendants'] fraud scheme." *Id.* at 240. They reasoned that the defendants "set out to obtain millions of dollars that they would not have received but for their fraudulent misrepresentations. Depriving PennDOT of DBE performance was **incidental** to that scheme. . . [T]he 'entire point' of the [defendants'] scheme

5

was to obtain PennDOT's money." *Id.* (emphasis in original); see also *United States v. Porat*, 76 F.4th 213, 219-20 (3d Cir. 2023) (affirming the district court's wire fraud conviction where the object of the scheme was money, even if the property interest also involved "intangible considerations").

Although *Kousisis* involved wire fraud and not health care fraud, it is clearly instructive in the instant matter. Here, as in *Kousisis*, the entire purpose of Defendants' scheme was to obtain money in the future. The obtaining of Medicaid contracts was incidental to Defendants' ultimate objective, money in the future. Defendants attempt to distinguish *Kousisis* by arguing that the indictment in the instant matter fails to demonstrate any economic loss due to Defendants' actions, as the services billed by Defendants to the MCOs were provided, medically necessary, provided to a Medicaid insured, covered by Medicaid and would have been paid if submitted by a different provider. Defendants want us to find that the facts in *Kousisis* only involved an economic loss sufficient for wire fraud because defendants in that case paid a 2.25% fee to the DBE for acting as a pass-through; this 2.25% was "not an amount PennDOT would have paid regardless of which contractor was performing the work." *Kousisis*, 84 F.4th at 241. As there was no such fee or kickback in the instant matter, Defendants argue that the instant indictment fails to show the Government suffered any economic loss at the hands of Defendants, as Medicaid would have paid some other provider to perform these services on Medicaid recipients if not the Defendants. ECF No. 252, p. 3. I find this argument to be unpersuasive.

The *Kousisis* Court held that defendants "set out to obtain millions of dollars that they would not have received but for their fraudulent misrepresentations." *Id.* at 240. The Third Circuit held that even though the agencies had obviously received some value from defendants' construction work, providing something of value "is no defense to criminal prosecution for fraud" when the agencies' goal in funding the project was frustrated. *Kousisis*, 82 F.4th at 242.

6

I find that the fact that Defendants set out to receive government money from Medicaid that they would not have received but for their fraudulent misrepresentations is sufficient to support an economic loss in this matter. The mere fact that Defendants provided something of value to Medicaid by providing appropriate dental services to Medicaid insureds is no defense to the relevant charges. By circumventing Medicaid's regulations, Defendants obtained money that they were not entitled to and frustrated Medicaid's goal in making certain that their services are only provided by appropriately approved medical providers. It is not necessary for there to be a fee or kickback received by Defendants; it is sufficient that they obtained money to which they would not have otherwise been entitled.

Further, it has been held that profits resulting from fraudulently obtained contracts are in fact property under the health care fraud statute. *United States v. Triana*, 468 F.3d 308 (6th Cir. 2006) (affirming District Court determination that Medicare suffered a loss for purposes of health care fraud statute even though podiatric services were provided to eligible recipients by a properly licensed podiatrist, as Defendant's ownership in the company who provided the services after he had been excluded from eligibility for the receipt of any Medicare funds was a diversion of funds.) The cases cited by Defendants all deal with government attempts to find defendants guilty of wire fraud and mail fraud based upon intangible rights such as video poker licenses, employee labor, etc. The indictment in this matter clearly alleges health care fraud based upon money to be obtained in the future from Medicaid.

Next, Defendants argue that the "supervisory billing" fraud set forth in the indictment fails to adequately apprise them of the charges against them, as they claim that the relationship set forth in the indictment is an "on-call" relationship that is permitted under Pennsylvania law. However, this argument is entirely without merit. The plain language of the indictment sets forth a health care fraud scheme where Defendants submitted fraudulent claims through a practice

Defendants themselves called "supervisory billing" and provides sufficient notice of those charges. Paragraphs 63 and 64 of the indictment provide background information regarding the requirements for providers to be credentialed with Medicaid before rendering any services, and the requirement that the claims reflect the identity of the provider providing the service. Paragraph 65 states that misrepresentation of the identity of the service provider is fraud, and paragraphs 77 through 85 of the indictment provide a detailed description of the nature of the "supervisory billing" fraud scheme. Counts 10 through 24 of the indictment provide Defendants with dates claims were received by the MCO, the approximate amounts billed, the service addresses on the claims and the name of the defendants charged in each count. The indictment plainly sets forth a health care fraud scheme based upon supervisory billing. Accordingly, this argument of Defendants must also fail.

Therefore, I find that the indictment in this matter properly alleges a health care fraud scheme in Counts 9 through 24, and Defendants' motion to dismiss those counts of the indictment is denied.

### B. Vivek Savani

Defendant Vivek argues that the indictment against him should be dismissed because it is unconstitutionally vague and legally insufficient as to him, as the indictment fails to plead that he had knowledge of the conspiracy or an agreement with any conspirators to commit the charged crime. ECF No. 273. Specifically, Vivek argues that the Government alleges he is part of the RICO conspiracy set forth in Count 1 of the indictment, but notes that this count does not discuss Vivek's alleged actions and/or role in the conspiracy at all. Vivek further claims that the indictment is devoid of any information regarding any overt act performed by Vivek in furtherance of the conspiracy. In response, the Government argues that the plain language of the indictment alleges that Vivek conspired with co-defendants to make materially false statements

in three separate H-1B visa applications, identifies the dates those petitions were filed and the co-defendant who submitted the application; therefore, the indictment is sufficient.

An indictment is sufficient under Federal Rule of Criminal Procedure 7 if it: (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction (in the event of a subsequent prosecution). *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quotation marks omitted), citing *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007). Further, Rule 12 allows a defendant to move to dismiss an indictment for failure to state an offense, and to prevail on a Rule 12 motion, a defendant must show that the indictment, on its face, fails to charge an essential element of the crime. *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013.)

In the instant matter, I find that the plain language of the indictment sufficiently alleges that Vivek conspired to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546. Count 2 of the indictment states that Vivek conspired with the named co-defendants to

> . . . knowingly ma[k]e under oath, and under penalty of perjury, and subscribe[] as true, false statements with respect to material facts in the Petitions for Nonimmigrant Worker to the United States Department of Homeland Security, Form I-129, and Labor Condition Applications for Nonimmigrant Workers to the United States Department of Labor, Form ETA-9035, including the supporting documents, for the workers listed in Overt Acts 1 through 35 of Count One. . . .

In addition to incorporating Overt Acts 1 through 35 of the RICO conspiracy set forth in Count 1, Count 2 also specifically alleges that Vivek committed Overt Acts 16, 26 and 34 of the RICO conspiracy in furtherance of the visa fraud conspiracy. ECF No. 1, p. 58. Overt acts 16, 26 and 34 listed in Count 2 identify the specific dates on which co-defendant Arun Savani executed multiple forms to obtain H-1B visas for Vivek which allegedly contained numerous materially false statements. Count 2 also incorporates Paragraphs 26 through 37 of Count 1, which set forth

details regarding the ways in which defendants, including Vivek in his role as a H-1B visa recipient, attempted to accomplish the conspiracy. Accordingly, I find that Count 2 contains the elements of the offense intended to be charged, sufficiently apprises Vivek of what he must be prepared to meet and allows Vivek to show with accuracy to what extent he may plead a former acquittal or conviction (in the event of a subsequent prosecution). Therefore, Vivek's motion to dismiss is denied[1].

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss the Indictment will be denied. An appropriate order follows.

---

[1] Vivek cites several cases in support of his motion to dismiss, but after review, none of them are persuasive to this Court, as they all address sufficiency of evidence at trial, which is irrelevant to this case as it is in a pretrial posture.