IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 23-16 |
| BHASKAR SAVANI, *et al*, | : | |

MEMORANDUM

**Schmehl, J.**   /s/JLS                                                                                     January 8, 2026

Before the Court are two related motions filed by Defendants in this action which seek to exclude certain expert testimony proffered by the government: (1) Defendant Sunil Philip's Motion to Exclude the Expert Testimony of Rajender West (ECF No. 531), and (2) the Joint Motion to Preclude the Proposed Expert Testimony of IRS Revenue Agent Rajander West and Dr. Jon Roxarzade (ECF No. 532) filed by Defendants Arun Savani, Niranjan Savani and Aleksandra Radomiak and joined by Defendant Bhaskar Savani. The government opposed the motions, and a Daubert hearing was held.

I.      BACKGROUND

In January 2023, pursuant to a 42-count indictment, a federal grand jury charged twelve defendants with a variety of crimes, including RICO conspiracy in violation of 18 U.S.C. § 1962(d) and conspiracy to commit money laundering and money laundering in violation of 18 U.S.C. §§ 1956 and 1957.

As relevant here, two of the alleged purposes of the RICO enterprise were (1) enrichment of members of the enterprise by defrauding Medicaid through the use of a complex billing fraud scheme and a myriad of business entities, some of which are alleged to have had nominee "owners" to conceal the members' role in the fraud, and (2) concealment and laundering of fraud

proceeds from the Medicaid fraud scheme through a complex web of companies—including alleged sham or shell companies—and financial transactions using a network of bank accounts associated with the web of companies.

As part of its case-in-chief, the government intends to introduce the testimony of proposed expert witness IRS-CI Special Agent Rajender J. West ("SA West"), an expert on money laundering. (*See* ECF No. 537). SA West's proposed testimony would first provide background information on money laundering concepts and define the principles and methods he applied in reaching his opinions. (*Id.*, p. 4). Then, he would apply that methodology to the facts of this case, including opining that the effect of financial transactions identified in the Indictment was to conceal or disguise the nature and source of the alleged fraud proceeds or to engage in financial transactions allegedly involving criminal proceeds in excess of $10,000. (*Id.*)

Defendants move to exclude SA West's expert testimony,[1] arguing it impermissibly explains the law governing the case (ECF No. 531, pp. 3-5), provides legal conclusions (*Id.*, pp. 6-9), lacks reliable expert methodology (ECF No. 532, pp. 3-4), summarizes the facts and evidence for the jury (ECF No. 531, pp. 6-9), and risks unfair prejudice outweighing its probative value (*Id.*, pp. 9-11; ECF No. 532, pp. 4-5).

II.     **STANDARD OF REVIEW**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See* FED. R. EVID. 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

---

[1] Defendants' Joint Motion also seeks to exclude the proposed expert testimony of Dr. Jon Roxarzade, a dentist who would provide testimony on the dental industry and dental service/support organizations based on his decades of experience in various roles. (*See* ECF No. 532). At the Daubert hearing, the government stated it will not call Dr. Roxarzade to testify as part of its case-in-chief. Since the government would only seek to elicit his testimony as a rebuttal expert, at this time it is not necessary to address Defendants' arguments.

      understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

This rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Qualification requires "that the witness possess specialized expertise." *Id*. To be reliable, the expert's opinion must be premised on more than mere "'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). Finally, the expert's testimony must "fit" the case at hand, that is, "must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider*, 320 F.3d at 405). When a party challenges an expert's opinions pursuant to Rule 702, the proffering party bears the burden of demonstrating by a preponderance of the evidence that the opinions of its proposed expert are admissible. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417-18 (3d Cir. 1999).

Additionally, Rule 704 provides that, in a criminal case, an expert cannot testify to whether a defendant acted with criminal intent (*see* Fed. R. Evid. 704(b)), and Rule 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. (*See* Fed. R. Evid. 403).

### III.  DISCUSSION

In their Joint Motion, Defendants argue SA West's proposed testimony is improper because it lacks any reliable expert methodology and simply assumes the Defendants are guilty of predicate offenses, ignoring alternative lawful explanations for evidence of certain conduct and transactions they engaged in. (ECF No. 532, pp. 3-4). Defendant Philip separately argues SA West's testimony should be excluded in its entirety because it impermissibly encroaches upon the province of both the Court and the jury in violation of the "fit" requirement of Rule 702(a) by 1) explaining the legal concepts of money laundering to the jury and 2) opining to the jury that the evidence is consistent with money laundering. (ECF No. 531, pp. 3-6). He further argues SA West's testimony offers impermissible state of mind opinions and improperly summarizes the facts and evidence for the jury. (*Id.*, pp. 6-7). Overall, Defendants contend SA West's testimony has minimal probative value, as it needlessly summarizes evidence for the jury, that is substantially outweighed by the risk of unfair prejudice. (*Id.*, pp. 9-11; ECF No. 532, pp. 4-5).

On the other hand, the government asserts SA West's proposed testimony will assist the jury in understanding the complexities associated with the transactions giving rise to the charged money laundering offenses and notes that SA West will not testify to the intentions or states of mind of the defendants. (ECF No. 537, p. 4) The government additionally states that SA West's testimony will not opine on the underlying specified unlawful activity (i.e., health care fraud and health care fraud conspiracy) or whether the financial transactions in fact involved criminal proceeds, necessary components of the alleged money laundering offenses. (*Id.*)

The Third Circuit has sanctioned the use of expert testimony in cases involving allegations of complex money laundering schemes to assist the trier of fact. *See United States v. Richardson*, 658 F.3d 333, 340 (3d Cir. 2011) (evidence of purpose to conceal can come in many

forms, including "expert testimony on practices of criminals"). Therefore, under Rule 702 SA West may properly explain how criminal money laundering works generally, including the purpose and three stages of money laundering, and discuss the different types of money laundering, such as concealment and transactional money laundering. SA West may also explain the concept of nominee ownership, and how that could be consistent with money laundering in the context of Medicaid fraud. This general testimony constitutes "scientific, technical, or other specialized knowledge" that "will help the trier of fact" in contextualizing the complex evidence presented. While money laundering is a legal concept, the purpose of SA West's testimony is to offer helpful context around practices that are consistent with money laundering based on his extensive experience. Therefore, although providing some background on the law concerning money laundering will be necessary, the testimony will not usurp the role of the Court in explaining what the law requires.

     SA West shall not, however, opine on whether the evidence presented against the Defendants in this case is consistent with money laundering, as the Court agrees with the Defendants' argument that such testimony would improperly usurp the role of the jury and essentially serve as a summary of the government's theory of the case. Opinions on whether specific conduct of the Defendants is consistent with money laundering necessarily assume the commission of predicate offenses and imply opinions on the mental states or intentions of the Defendants in violation of Rule 704(b), and while a general explanation of criminal money laundering practices may be helpful to the jury, the jury will not require assistance to then apply those concepts to the evidence presented in this case. Limiting the testimony in this way avoids the danger of unfair prejudice substantially outweighing probative value as well as the questions Defendants raised about methodology.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Exclude Expert Testimony will be granted in part. An appropriate order follows.